UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Miami Division

ANN O'MALLEY,

Plaintiff,

CASE NO.: 1:25-CV-24748-KMW

v.

PRINCESS CRUISE LINES, LTD.,

Defendant.
_______________________________________/

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, ANN O'MALLEY, brings this action individually against Defendant, PRINCESS CRUISE LINES, LTD. (hereinafter "PRINCESS"), a for profit corporation, for personal injuries sustained by Plaintiff, ANN O'MALLEY. Plaintiff, ANN O'MALLEY, seeks damages and demands a jury trial on all issues so triable against Defendant, PRINCESS.

**CASE SYNOPSIS**

1. *The O'Malleys, a retired couple, saved up for a cruise vacation on the "Emerald Princess" from Los Angeles, California, to Fort Lauderdale, Florida. About three (3) hours after the ship departed from the port in Los Angeles, Mrs. O'Malley presented to the ship's medical center with numerous signs and symptoms indicating that she was suffering a stroke. The ship's medical center was unequipped to treat her onboard and, despite the obvious signs that Mrs. O'Malley was suffering a stroke, she was discharged from the ship's medical center. However, as she was walking out of the medical center, Mrs. O'Malley started to feel lightheaded, was placed in a wheelchair, and taken back into the medical center. She was again discharged but brought back to the medical center by paramedics later that night because she lost consciousness while taking a shower. The next day, Mrs. O'Malley experienced even more signs she was suffering a stroke including difficulty forming sentences. Even with the clear signs Mrs. O'Malley was suffering a stroke, the ship's Medical Personnel deemed her condition as "non-urgent." Two days after exhibiting the obvious signs Mrs. O'Malley was suffering a stroke, she was finally evacuated from the ship to a hospital in Cabo San Lucas, Mexico where she continued to receive substandard care. The Medical Personnel in Mexico confirmed that Mrs. O'Malley suffered a*

*stroke, but due to the delay in treatment, she is left with permanent devastating physical, cognitive, and neurological deficits.*

**JURISDICTION AND VENUE**

2. This action is an action under general maritime law and the laws of Florida, as applicable.

3. The matter in controversy exceeds, exclusive of interests and costs, the sum specified by 28 U.S.C. § 1332. In the alternative, if diversity jurisdiction does not apply, then this matter falls under the admiralty and maritime jurisdiction of this Court.

4. This action is being pursued in this Court, as opposed to state court as otherwise allowed by the Saving to Suitors Clause of 28 U.S.C. § 1333, because PRINCESS unilaterally inserts a forum selection clause into its cruise tickets that requires its passengers to file cruise-related suits *only in this federal district and division,* as opposed to any other place in the world.

5. PRINCESS, at all times material hereto, personally or through an agent:

   a. Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

   b. Was engaged in substantial activity within this state;

   c. Operated vessels in the waters of this state;

   d. Purposefully availed themselves of the benefits of conducting activities in California by purposefully directing their activities toward the state, thereby obtaining the benefits and protections of the state's laws;

   e. The acts of PRINCESS set out in this Complaint occurred in whole or in part in this state and/or county; and

   f. By stipulation of the parties, PRINCESS submits to the jurisdiction of this Court.

6. The causes of action asserted in this Complaint arise under General Maritime Law of the United States.

7. At all times material, Plaintiff, ANN O'MALLEY (hereinafter "Mrs. O'Malley"), was and is a resident of Florida.

8. At all times material, PRINCESS was and is a for profit corporation with its worldwide headquarters, principal address and principal place of business located in Miami-Dade County, Florida.

9. At all times material, PRINCESS was and is a common carrier engaged in the business of marketing, selling and operating a cruise line out of various ports throughout the world including, Miami, Florida and Los Angeles, California.

10. At all times material, PRINCESS derived substantial revenue from cruises originating and terminating in various ports throughout the world including, Miami, Florida and Los Angeles, California.

11. At all times material, PRINCESS employed and/or contracted with the vessel's doctors and nurses (hereinafter "Medical Personnel") to work as the ship's doctors and nurses aboard the *Emerald Princess*.

**FACTUAL BACKGROUND**

12. PRINCESS, as a common carrier, is engaged in the business of providing vacation cruises to the public aboard vessels including the *Emerald Princess*. At all times material hereto, PRINCESS owned, operated, managed, maintained, and/or controlled the *Emerald Princess*, including the onboard medical center.

[CONTINUED ON NEXT PAGE]

13. PRINCESS, through online, television, radio and print advertisements specifically markets its cruises as family friendly vacations with extensive offerings and activities for people of all ages and abilities. As part of providing vacation cruises, PRINCESS is obligated to provide competent medical care and facilities, as well as personnel capable of making sound medical and evacuation decisions.

14. As part of providing vacation cruises, PRINCESS advertised that the ship's onboard medical center was staffed by licensed physicians and critical care nurses and that it is well equipped to handle most emergencies.

15. PRINCESS charges money to passengers for medical services provided. As such, PRINCESS is in the business of providing medical services to passengers for profit, and owes a duty to provide competent and non-negligent medical care and services.

16. PRINCESS owned, operated, controlled, and/or maintained the medical center aboard the *Emerald Princess*. PRINCESS maintained a medical operations division at corporate headquarters in Miami, Florida. The onboard medical center and medical operations division work as a team in the event of medical evacuation emergency. PRINCESS is aware that medical emergencies may arise on its vessels and is aware of the essential need to promptly evacuate passengers suffering from serious medical emergencies.

17. PRINCESS, through its shore-side Fleet Medical Operations division, had the ability to control and monitor each and every step taken by its Medical Personnel onboard the *Emerald Princess* via telephone, video conference, skype, or otherwise.

18. PRINCESS officials and employees had the ability to monitor and participate in safety, security, and medical emergencies onboard the vessel by communicating with the *Emerald Princess's* crew via telephone, videoconference, Skype, and other means of communication. PRINCESS, through both the crew onboard and their shore-side officials and employees, who acted in consultation with one another, failed to properly care and promptly and properly evacuate Mrs. O'Malley.

19. Upon information and belief, the Master of the *Emerald Princess* was consulted regarding Mrs. O'Malley's condition and the emergent nature of the situation. The Master is an employee or agent of PRINCESS and had the ability to divert or control the vessel or make the appropriate decision to afford one of its passengers the medical care and treatment Mrs. O'Malley desperately needed. He/she and his/her bridge team are also responsible with determining the logistics for medical evacuation or disembarkation, properly coordinating with the United States Coast Guard and/or the Mexican Coast Guard/Navy to evacuate sick and injured individuals, and ensuring that PRINCESS passengers are afforded the logistical support needed during a medical emergency. This responsibility is carried out in conjunction with PRINCESS shore-based fleet operations and shore-based individuals from PRINCESS that coordinate voyage logistics.

20. At all times PRINCESS was vicariously liable for the negligence of the Medical Personnel onboard the *Emerald Princess*, who were employees, apparent agents, or actual agents of PRINCESS.

21. At all times PRINCESS was vicariously liable for the negligence of the non-medical personnel onboard the *Emerald Princess*, who were employees, apparent agents, or actual agents of PRINCESS.

22. At all times PRINCESS had control or the right to control all persons working in its medical departments, including the Medical Personnel that improperly treated and negligently mismanaged Mrs. O'Malley's condition.

23. Mrs. O'Malley and her husband relied upon PRINCESS'S representations regarding its available shipboard medical facility with its qualified and competent physicians in their decision to purchase the cruise and contract with PRINCESS.

24. On February 6, 2024, Mrs. O'Malley and her husband boarded the *Emerald Princess* for a cruise from Los Angeles, California, to Fort Lauderdale, Florida. Mrs. O'Malley was a paying passenger.

25. On February 6, 2024 around 6:30 p.m., about three (3) hours after the *Emerald Princess* departed, Mrs. O'Malley awoke from a nap feeling unwell, shivering, and experiencing chills. She went to the *Emerald Princess's* medical center to receive care and treatment from the ship's physician. She reported symptoms including uncontrollable shakes, dizziness, blackouts/fainting, weakness, nausea, and vomiting. She was examined by Dr. Jericho Bautista who noted weakness to Mrs. O'Malley's bilateral hands and legs. All of Mrs. O'Malley's symptoms are telltale signs she was suffering a stroke. Dr. Bautista assessed Mrs. O'Malley, incorrectly diagnosed her with a urinary tract infection and prescribed her antibiotics.

26. At all times material, Dr. Bautista was an employee or agent of PRINCESS, as its ship physician and was at all time material acting within the course and scope of his employment or agency with PRINCESS.

27. Mrs. O'Malley was later discharged and as she was walking out of the medical center, she started to feel lightheaded, was placed in a wheelchair, taken back into the medical center, and laid on a bed for a few minutes. She was then taken back to her cabin in a wheelchair.

28. Later that night, Mrs. O'Malley was brought back to the medical center in a wheelchair by paramedics after she lost consciousness when trying to take a shower. She was brought to the medical center awake but confused. Confusion is another telltale sign of suffering a stroke. Mrs. O'Malley remained admitted to the medical center.

29. On February 7, 2024, Mrs. O'Malley then experienced difficulty forming sentences which is a significant sign of an ischemic stroke in its early stages. It was also noted that Mrs. O'Malley's white blood cell count had increased since the day before which can be an indicator of the severity of a stroke. Dr. Bautista then diagnosed Mrs. O'Malley with septic shock from urosepsis and volume depletion, improperly deemed her condition as "non-urgent," and treated her with antibiotics. Even if Dr. Bautista was correct that Mrs. O'Malley had septic shock, that is an urgent and life-threatening condition that cannot be treated in the medical center and requires immediate evacuation to a shoreside medical facility for proper care and treatment.

30. Eventually, on February 8, 2024 around 1:00 p.m., nearly forty-eight (48) hours after Mrs. O'Malley's stroke symptoms began and she was misdiagnosed, Dr. Bautista changed Mrs. O'Malley's status to "urgent" based upon the incorrect diagnosis of septic shock from urosepsis, she was medically disembarked, and taken to BlueNet Hospital in Cabo San Lucas, Mexico. Due to Dr. Bautista's misdiagnosis of Mrs. O'Malley's condition, the medical staff at BlueNet Hospital did not immediately evaluate Mrs. O'Malley to determine if she suffered or was about to suffer a stroke.

[CONTINUED ON NEXT PAGE]

31. On February 10, 2024, Mrs. O'Malley's husband expressed concerns to the medical staff at BlueNet Hospital that Mrs. O'Malley suffered speech and cognitive issues that were not being addressed and that she was continuing to decline. Mrs. O'Malley's husband also told the Medical Personnel that he wanted his wife medically evacuated to the United States for medical care and treatment.

32. On February 11, 2024, almost five (5) days after Mrs. O'Malley began experiencing stroke symptoms onboard the *Emerald Princess*, the medical staff at BlueNet Hospital contacted a neurologist who ordered an urgent MRI of Mrs. O'Malley's brain. She underwent the MRI that day which confirmed that she had suffered an ischemic stroke in the areas of the left posterior cerebral artery and left middle cerebral artery. Unknown to both Mrs. O'Malley or her husband, the BlueNet Hospital staff began administering Mrs. O'Malley with Cerebrolysin®, a medication to treat the stroke.

33. Mrs. O'Malley remained at BlueNet Hospital in Cabo San Lucas for a total of thirteen (13) days until she was discharged on February 20, 2024. BlueNet Hospital was unequipped to care for Mrs. O'Malley's dire condition, and she was effectively deprived of the necessary level of care he needed during a critical time for treatment of her stroke as a result of PRINCESS'S negligent decisions. As a result of PRINCESS'S negligence, Mrs. O'Malley was not medically evacuated to a hospital in the United States on February 6, 2024, when she initially presented to the *Emerald Princess's* medical center with stroke symptoms.

34. Dr. Bautista failed to recognize that Mrs. O'Malley was having clear indications of a stroke at the time she presented to the *Emerald Princess's* medical center for treatment and incorrectly diagnosed her with septic shock from urosepsis. Her condition was improperly deemed "non-urgent" by Dr. Bautisa and PRINCESS'S Medical Personnel.

35. In light of the symptoms and manifestations exhibited by Mrs. O'Malley, any reasonably prudent healthcare provider in Dr. Bautista's position would have known that a medical air-evacuation to a comprehensive stroke center was medically necessary.

36. An air-evacuation of Mrs. O'Malley was both medically necessary and operationally feasible.

37. The misdiagnosis and failure to timely administer proper treatment had caused precious treatment time to pass with the stroke symptoms unchecked in Mrs. O'Malley's brain. These failures caused the stroke to wreak havoc on Mrs. O'Malley's brain, body and neurological system; she would never be the same.

38. PRINCESS'S personnel made the decision to continue the cruise without making any effort or arrangements to medically evacuate Mrs. O'Malley to the United States or get her to a higher level of care capable of treating her for her conditions prior to arrival at the pre-planned port of call. It appears that the Master and shore-side fleet operations never consulted the United States Coast Guard and/or the Mexican Coast Guard/Navy, or examined any possibilities for medical disembarkation or evacuation other than continuing on the prearranged voyage plan.

39. The failure to properly evaluate, recognize, diagnose, and treat Mrs. O'Malley for the stroke she was suffering prevented her from receiving proper thrombolytic medications and clot-busting drugs to prevent the stroke symptoms from worsening into the catastrophic injuries she was eventually caused to suffer.

40. The failure to properly evaluate, recognize, diagnose, and treat Mrs. O'Malley for the stroke she was suffering prevented her from undergoing a mechanical thrombectomy, or other potential medical procedure to her benefit, to prevent the stroke symptoms from worsening into the catastrophic injuries she was eventually caused to suffer.

41. The failure to properly evaluate, recognize, and diagnose Mrs. O'Malley's condition prevented her from being emergently evacuated from the *Emerald Princess* and transported to a higher level of care capable of treating her for her stroke to prevent devastating injuries.

42. The failure to properly evaluate, recognize, and diagnose Mrs. O'Malley's condition prevented her from being emergently evacuated from the *Emerald Princess* and evaluated by neurologists or neuro-interventional specialists who are trained to treat stroke patients.

43. As a direct and proximate result of PRINCESS'S negligence, Mrs. O'Malley has been left with permanent devastating physical, cognitive, and neurological deficits. She now has visual field deficits, her speech is impaired, and she continues to have difficulty finding words and forming sentences. Her life will never be the same. She has sustained damages that include, but are not limited to, pain and suffering, physical injuries, disability, significant disfigurement, embarrassment, mental anguish, loss of capacity for the enjoyment of life, expenses of hospitalization, medical and nursing care treatment expenses, and a shortened life span. Her recovery has been a grueling and tragic course.

44. All conditions precedent to the commencement of this action have been performed, waived, or otherwise satisfied.

[CONTINUED ON NEXT PAGE]

## COUNT I – NEGLIGENCE

45. Mrs. O'Malley re-alleges and incorporates by reference paragraphs 1 to 44 as though fully stated herein.

46. In light of PRINCESS'S experience and familiarity with the demographics of the passengers on its cruises, the onboard and offshore recreational activities taking place on its cruises, the foreign destinations visited on its cruises, and the illnesses and emergencies experienced by past cruise passengers, it was reasonably foreseeable to PRINCESS that the *Emerald Princess* would have passengers similar in age to Mrs. O'Malley, and passengers with common illnesses and emergencies such as Mrs. O'Malley's condition. Likewise, it was reasonably foreseeable that such passengers would require proper examination, evaluation, treatment, and evacuation.

47. PRINCESS owed Mrs. O'Malley the duty of exercising reasonable care under the circumstances. In particular, as Mrs. O'Malley suffered a stroke onboard the *Emerald Princess* and was taken to the ship's medical center, PRINCESS owed Mrs. O'Malley the duty of protecting her from injury relating to her emergent condition, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.

48. PRINCESS breached its duty of protecting Mrs. O'Malley from injury relating to her emergent condition, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.

49. PRINCESS breached its duty in one or more of the following ways:

a. failure to timely assess the Mrs. O'Malley's medical condition;

b. failure to provide the Mrs. O'Malley with prompt and/or proper shipboard medical care, including but not limited to the provision of appropriate medications;

c. failure to furnish the Mrs. O'Malley such medical advice, aid and/or assistance as an ordinarily prudent person would render under similar circumstances;

d. failure to adequately staff the vessel with sufficient Medical Personnel, sufficient medical supplies and/or medication;

e. violated the International Cruise Line Bill of Rights, which states that passengers have "[t]he right to have available on board ships [. . .] full-time, professional emergency medical attention, as needed until shore side medical care becomes available"; and "[t]he right to a ship crew that is properly trained in emergency and evacuation procedures" by keeping Mrs. O'Malley on the vessel against her will;

f. failure to have "Face to Face Telemedicine" tools in place and/or failure to use those tools when necessary, such as in the Mrs. O'Malley's case to ensure adequate and proper medical care is provided; and/or

g. deviated from the standard of care for treating patients in Mrs. O'Malley's condition.

50. PRINCESS knew or reasonably should have known about these conditions and failures, but failed to correct them prior to the incident that injured Mrs. O'Malley. These conditions and failures were longstanding and obvious to PRINCESS. PRINCESS is aware that passengers may suffer from life threatening conditions such as stroke, and are aware of the urgent need to air evacuate such patients to competent medical centers capable of providing treatment.

51. As a direct and proximate result of PRINCESS breaching its duty to Mrs. O'Malley, she has been left with permanent devastating cognitive and neurological deficits. If Mrs. O'Malley had received appropriate care and treatment onboard or been timely evacuated from the ship, she would not have suffered such devastating injuries to her brain and body.

WHEREFORE, Plaintiff, ANN O'MALLEY, respectfully requests that this Court enter judgment against PRINCESS for compensatory damages, interest, court costs, and all other relief recoverable under law or as this Court deems just and proper.

**COUNT II – NEGLIGENCE OF NON-MEDICAL PERSONNEL**
(Vicarious Liability Based Upon Actual Agency / *Respondeat Superior*)

52. Mrs. O'Malley re-alleges and incorporates by reference paragraphs 1 to 44 as though fully stated herein.

53. In light of PRINCESS'S experience and familiarity with the demographics of the passengers on its cruises, the onboard and offshore recreational activities taking place on its cruises, the foreign destinations visited on its cruises, and the illnesses and emergencies experienced by past cruise passengers, it was reasonably foreseeable to PRINCESS that the *Emerald Princess* would have passengers similar in age to Mrs. O'Malley, and passengers with common illnesses and emergencies such as Mrs. O'Malley's condition. Likewise, it was reasonably foreseeable that such passengers would require proper medical logistical support and medical evacuation.

54. PRINCESS, through its non-medical personnel, including its officers, directors, employees, agents, servants and/or persons otherwise authorized to act on behalf of PRINCESS, both on board the *Emerald Princess* and located at PRINCESS'S shore-side offices, including but not limited to, the ship's Captain, the First Officer, Staff Captain, Hotel General Manager, Guest Relations Manager, Chief Purser, Port Paper Officer/Administration Officer, employees in the Health Operations Center, Port Agent(s), and/or employees in the Care Office USA, owed Mrs. O'Malley the duty of exercising reasonable care under the circumstances. In particular, as Mrs. O'Malley suffered a stroke onboard the *Emerald Princess* and was taken to the ship's medical center, PRINCESS owed Mrs. O'Malley the duty of protecting her from injury relating to her emergent condition, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.

55. PRINCESS, through the negligence of its non-medical personnel, both on board the *Emerald Princess* and located at PRINCESS'S shore-side offices, including but not limited to, the ship's Captain,the First Officer, Staff Captain, Hotel General Manager, Guest Relations Manager, Chief Purser, Port Paper Officer/Administration Officer, employees in the Health Operations Center, Port Agent(s), and/or employees in the Care Office USA, breached its duty to Mrs. O'Malley to exercise reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances. PRINCESS, through its non-medical personnel, breached its duty in one or more of the following ways:

a. the ship's Captain, the First Officer, Staff Captain, Hotel General Manager, Guest Relations Manager, Chief Purser, Port Paper Officer/Administration Officer, employees in the Health Operations Center, Port Agent(s), and/or employees in the Care Office USA violated the International Cruise Line Bill of Rights, which states that passengers have "[t]he right to disembark a docked ship if essential provisions such as ... access to medical care cannot be adequately provided onboard," by keeping Mrs. O'Malley on the vessel against her will;

b. the ship's Captain,the First Officer, Staff Captain, Hotel General Manager, Guest Relations Manager, Chief Purser, and/or Port Paper Officer/Administration Officer failed to timely and properly communicate the condition of Mrs. O'Malley to its shore side personnel;

c. the ship's Captain, the First Officer, Staff Captain, Hotel General Manager, Guest Relations Manager, Chief Purser, Port Paper Officer/Administration Officer, employees in the Health Operations Center, Port Agent(s), and/or employees in the Care Office USA failed to follow proper policies and procedures to ascertain the operational feasibility of a medical evacuation for Mrs. O'Malley, including but not limited to, MED-1303-Patient Referral, MED-3104-Medical Disembarkation, MED-3105-Shoreside Information Resources, MED-3901-Shipboard Medical Personnel Availability, and any other applicable policies and procedures revealed through discovery;

d. the ship's Captain, the First Officer, Staff Captain, Hotel General Manager, Guest Relations Manager, Chief Purser, Port Paper Officer/Administration Officer, employees in the Health Operations Center, Port Agent(s), and/or employees in the Care Office USA failed to air-evacuate Mrs. O'Malley from the ship so that she could promptly receive treatment;

e. the ship's Captain failed to timely divert the ship so that Mrs. O'Malley could promptly receive treatment;

f. the ship's Captain, the First Officer, Staff Captain, Hotel General Manager, Guest Relations Manager, Chief Purser, Port Paper Officer/Administration Officer, employees in the Health Operations Center, Port Agent(s), and/or employees in the Care Office USA failed to evacuate Mrs. O'Malley by speed boat, tender boat, and/or transfer;

g. the ship's Captain, the First Officer, Staff Captain, Guest Services crewmembers, employees in the Health Operations Center, and/or Port Agent(s) failed to contact the United States Coast Guard and/or the Mexican Coast Guard/Navy regarding the need for an air evacuation;

h. the ship's Captain, the First Officer, Staff Captain, Hotel General Manager, Guest Relations Manager, Chief Purser, Port Paper Officer/Administration Officer, employees in the Health Operations Center, Port Agent(s), and/or employees in the Care Office USA failed to ascertain whether the medical facility in Mexico was a proper choice for the disembarkation of its passenger;

i. the ship's Captain, the First Officer, Staff Captain, Hotel General Manager, Guest Relations Manager, Chief Purser, Port Paper Officer/Administration Officer, employees in the Health Operations Center, Port Agent(s), and/or employees in the Care Office USA failed to choose a medical center capable of adequately treating its passenger prior to disembarkation; and

j. the ship's Captain, the First Officer, Staff Captain, Hotel General Manager, Guest Relations Manager, Chief Purser, Port Paper Officer/Administration Officer, employees in the Health Operations Center, Port Agent(s), and/or employees in the Care Office USA failed to arrange for any follow up transportation from Mexico to the United States for its passenger.

56. PRINCESS, through its non-medical personnel, both on board the *Emerald Princess* and located at PRINCESS'S shore-side offices, including but not limited to, the ship's Captain, the First Officer, Staff Captain, Hotel General Manager, Guest Relations Manager, Chief Purser, Port Paper Officer/Administration Officer, employees in the Health Operations Center, Port Agent(s), and/or employees in the Care Office USA, knew or reasonably should have known about these conditions and failures, but failed to correct them prior to the incident that injured Mrs. O'Malley. These conditions and failures were longstanding and obvious to PRINCESS.

57. As a direct and proximate result of PRINCESS breaching its duty to Mrs. O'Malley, she has been left with permanent devastating cognitive and neurological deficits. If Mrs. O'Malley had received appropriate care and treatment onboard or been timely evacuated from the ship, she would not have suffered such devastating injuries to her brain and body.

WHEREFORE, Plaintiff, ANN O'MALLEY respectfully requests that this Court enter judgment against the PRINCESS for compensatory damages, interest, court costs, and all other relief recoverable under law or as this Court deems just and proper.

**COUNT III – NEGLIGENCE OF MEDICAL PERSONNEL**
(Vicarious Liability Based Upon Actual Agency / *Respondeat Superior*)

58. Mrs. O'Malley re-alleges and incorporates by reference paragraphs 1 to 44 as though fully stated herein.

59. PRINCESS'S Medical Personnel, including the doctors and nurses both on board the *Emerald Princess* and located at PRINCESS'S shore-side offices, including but not limited to, the Senior Director of Fleet Medical Operations, Dr. Grant Tarling – Chief Health Officer, Dr. Jericho Bautista, Dr. Martelie Angela Rhius, Joshua Lee Tindel PARA, Deshan Govender RN, Natahsa Smith RN, Margaret Lyall Erasmus RN, Mark Anthony Sheehan PARA, and the ship's Senior Doctor, were the employees, agents, servants and/or persons otherwise authorized to act on

behalf of PRINCESS. Thus, PRINCESS is vicariously liable for the acts and/or omissions of its Medical Personnel.

60. PRINCESS acknowledged that its Medical Personnel, including the doctors and nurses both on board the *Emerald Princess* and located at PRINCESS'S shore-side offices, including but not limited to, the Senior Director of Fleet Medical Operations, Dr. Grant Tarling – Chief Health Officer, Dr. Jericho Bautista, Dr. Martelie Angela Rhius, Joshua Lee Tindel PARA, Deshan Govender RN, Natahsa Smith RN, Margaret Lyall Erasmus RN, Mark Anthony Sheehan PARA, and the ship's Senior Doctor, would act for it, and the Medical Personnel manifested an acceptance of the undertaking. For example: (1) PRINCESS directly paid the Medical Personnel for their work in the medical center onboard the *Emerald Princess*; (2) the medical center on board the *Emerald Princess* was created, owned and operated by PRINCESS; (3) the Medical Personnel on board the *Emerald Princess* worked at what PRINCESS describes in its advertising as PRINCESS'S medical center; and (4) PRINCESS knowingly provided, and the Medical Personnel on board the *Emerald Princess* knowingly wore, uniforms bearing PRINCESS'S name and logo; the ship physician on the *Emerald Princess* is considered and titled an officer of PRINCESS'S cruise line.

61. PRINCESS'S Medical Personnel, including the doctors and nurses both on board the *Emerald Princess* and located at PRINCESS'S shore-side offices, including but not limited to, the Senior Director of Fleet Medical Operations, Dr. Grant Tarling – Chief Health Officer, Dr. Jericho Bautista, Dr. Martelie Angela Rhius, Joshua Lee Tindel PARA, Deshan Govender RN, Natahsa Smith RN, Margaret Lyall Erasmus RN, Mark Anthony Sheehan PARA, and the ship's Senior Doctor, were subject to the right of control by PRINCESS, and were acting within the scope of their employment or agency. For example: (1) the Medical Personnel were employed by

PRINCESS; (2) the Medical Personnel were hired to work in a medical center on board the *Emerald Princess* that was created, owned and operated by PRINCESS; (3) the Medical Personnel were paid salaries and/or other employment related benefits directly by PRINCESS; (4) the Medical Personnel on board the *Emerald Princess* were considered to be members of the ship's crew; (5) the Medical Personnel were required to wear uniforms or other insignia furnished by PRINCESS; (6) PRINCESS put the Medical Personnel on board the *Emerald Princess* under the command of the ship's superior officers, and they were subject to the ship's discipline and the master's orders; (7) PRINCESS had the right to fire its Medical Personnel; (8) PRINCESS directly billed Mrs. O'Malley and other passengers onboard the *Emerald Princess* for services rendered by its Medical Personnel and/or use of the onboard medical center, medical equipment and medical supplies; and (9) the Medical Personnel on board the *Emerald Princess* were subject to the control of PRINCESS'S shore-side medical department.

62. PRINCESS, through its Medical Personnel, both on board the *Emerald Princess* and located at PRINCESS'S shore-side offices, including but not limited to, the Senior Director of Fleet Medical Operations, Dr. Grant Tarling – Chief Health Officer, Dr. Jericho Bautista, Dr. Martelie Angela Rhius, Joshua Lee Tindel PARA, Deshan Govender RN, Natahsa Smith RN, Margaret Lyall Erasmus RN, Mark Anthony Sheehan PARA, and the ship's Senior Doctor, owed Mrs. O'Malley the duty of exercising reasonable care under the circumstances. In particular, as Mrs. O'Malley suffered a stroke on board the *Emerald Princess* and was taken to the ship's medical center, PRINCESS owed Mrs. O'Malley the duty of protecting her from injury relating to her emergent condition, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.

63. PRINCESS, through its Medical Personnel, both on board the *Emerald Princess* and located at PRINCESS'S shore-side offices, including but not limited to, the Senior Director of Fleet Medical Operations, Dr. Grant Tarling – Chief Health Officer, Dr. Jericho Bautista, Dr. Martelie Angela Rhius, Joshua Lee Tindel PARA, Deshan Govender RN, Natahsa Smith RN, Margaret Lyall Erasmus RN, Mark Anthony Sheehan PARA, and the ship's Senior Doctor, breached its duty of protecting Mrs. O'Malley from injury relating to her emergent condition, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances. PRINCESS, through its Medical Personnel, breached its duty in one or more of the following ways:

a. violated the International Cruise Line Bill of Rights, which states that passengers have "[t]he right to disembark a docked ship if essential provisions such as ... access to medical care cannot be adequately provided onboard," by keeping Mrs. O'Malley on the vessel against her will;

b. failed to properly assess the condition of Mrs. O'Malley;

c. failed to properly diagnose Mrs. O'Malley;

d. failed to timely diagnose Mrs. O'Malley;

e. failed to properly treat Mrs. O'Malley;

f. failed to perform or arrange for appropriate diagnostics testing given Mrs. O'Malley's condition;

g. failed to obtain consultations with appropriate specialists;

h. failed to properly monitor Mrs. O'Malley;

i. failed to air-evacuate Mrs. O'Malley from the ship so that she could promptly receive treatment;

j. failed to timely divert the ship so that Mrs. O'Malley could promptly receive treatment;

k. failed to contact the United States Coast Guard and/or the Mexican Coast Guard/Navy regarding the need for an air evacuation;

l. failed to properly or timely consult qualified shore based personnel regarding Mrs. O'Malley 's condition;

m. failed to obtain a proper medical opinion regarding Mrs. O'Malley's condition;

n. failed to timely utilize "Telemedicine" and other resources on the vessel to properly assess Mrs. O'Malley's condition;

o. PRINCESS failed to appreciate the severity of Mrs. O'Malley's worsening condition;

p. failed to perform any procedure to Mrs. O'Malley's medical benefit;

q. failed to properly ascertain sufficient information to determine where Mrs. O'Malley should be transferred;

r. negligently elected to send Mrs. O'Malley to a medical facility in Mexico that was unequipped and unable to treat her condition;

s. failed to ascertain whether the medical facility in Mexico was capable of treating its passenger prior to disembarking Mrs. O'Malley to the facility;

t. failed to arrange for any follow up transportation for Mrs. O'Malley after disembarking her in Mexico, effectively stranding her in Mexico for thirteen days; and

u. deviated from the standard of care for treating patients in Mrs. O'Malley's condition.

64. PRINCESS, through its Medical Personnel, both on board the *Emerald Princess* and located at PRINCESS'S shore-side offices, including but not limited to, the Senior Director of Fleet Medical Operations, Dr. Grant Tarling – Chief Health Officer, Dr. Jericho Bautista, Dr. Martelie Angela Rhius, Joshua Lee Tindel PARA, Deshan Govender RN, Natahsa Smith RN, Margaret Lyall Erasmus RN, Mark Anthony Sheehan PARA, and the ship's Senior Doctor, knew or reasonably should have known about these conditions and failures, but failed to correct them

prior to the incident that injured Mrs. O'Malley. These conditions and failures were longstanding and obvious to PRINCESS.

65. As a direct and proximate result of PRINCESS breaching its duty to Mrs. O'Malley, he has been left with permanent devastating cognitive and neurological deficits. If Mrs. O'Malley had received appropriate care and treatment onboard or been timely evacuated from the ship, she would not have suffered such devastating injuries to her brain and body.

WHEREFORE, Plaintiff, ANN O'MALLEY, respectfully requests that this Court enter judgment against the PRINCESS for compensatory damages, punitive damages, interest, court costs, and all other relief recoverable under law or as this Court deems just and proper.

**COUNT IV – NEGLIGENCE OF MEDICAL PERSONNEL**
(Vicarious Liability Based Upon Apparent Agency)

66. Mrs. O'Malley re-alleges and incorporates by reference paragraphs 1 to 44 as though fully stated herein.

67. PRINCESS'S Medical Personnel, including the doctors and nurses on board the *Emerald Princess*, based upon Plaintiff's knowledge at this time includes Dr. Jericho Bautista, Dr. Martelie Angela Rhius, Joshua Lee Tindel PARA, Deshan Govender RN, Natahsa Smith RN, Margaret Lyall Erasmus RN, Mark Anthony Sheehan PARA, and the ship's Senior Doctor, were the apparent employees, agents, servants and/or persons otherwise authorized to act on behalf of PRINCESS. Thus, PRINCESS is vicariously liable for the acts and/or omissions of its Medical Personnel.

[CONTINUED ON PAGE]

68. PRINCESS made representations to Mrs. O'Malley and other passengers onboard the *Emerald Princess* that the ship's Medical Personnel, based upon Plaintiff's knowledge at this time includes Dr. Jericho Bautista, Dr. Martelie Angela Rhius, Joshua Lee Tindel PARA, Deshan Govender RN, Natahsa Smith RN, Margaret Lyall Erasmus RN, Mark Anthony Sheehan PARA, and the ship's Senior Doctor, were the employees, agents, servants and/or persons otherwise authorized to act for PRINCESS'S benefit. For example: (1) PRINCESS promoted the Medical Personnel on board the *Emerald Princess* and represented them as being PRINCESS employees through brochures, internet advertising and/or signs, documents, and uniforms on the ship; (2) PRINCESS promoted the medical center on board the *Emerald Princess* and described it in proprietary language; (3) the Medical Personnel on board the *Emerald Princess* worked in the medical center that PRINCESS promoted and described in proprietary language; (4) PRINCESS directly bills Mrs. O'Malley and other passengers onboard the *Emerald Princess* for services rendered by the onboard Medical Personnel and/or use of the onboard medical center, medical equipment and medical supplies; (5) the Medical Personnel on board the *Emerald Princess* were required to wear uniforms or other insignia furnished by PRINCESS; (6) PRINCESS held out the Medical Personnel on board the *Emerald Princess* as members of the ship's crew; and (7) the Medical Personnel on board the *Emerald Princess* spoke and acted as though they were employed by PRINCESS. PRINCESS had knowledge of such representations but never took any action to indicate otherwise.

[CONTINUED ON PAGE]

69. PRINCESS'S representations to Mrs. O'Malley and other passengers onboard the *Emerald Princess* caused them to reasonably believe that the ship's Medical Personnel, based upon Plaintiff's knowledge at this time includes Dr. Jericho Bautista, Dr. Martelie Angela Rhius, Joshua Lee Tindel PARA, Deshan Govender RN, Natahsa Smith RN, Margaret Lyall Erasmus RN, Mark Anthony Sheehan PARA, and the ship's Senior Doctor, were the employees, agents, servants and/or persons otherwise authorized to act for PRINCESS'S benefit. Indeed, PRINCESS actually intended that Mrs. O'Malley and other passengers onboard the *Emerald Princess* have such perception or belief because it is a marketing tool to induce passengers such as Mrs. O'Malley to purchase cruises on PRINCESS'S ships in the first place, to feel secure while on board PRINCESS'S ships and/or to be a repeat customer.

70. PRINCESS'S representations to Mrs. O'Malley and other passengers onboard the *Emerald Princess* induced their detrimental, justifiable reliance upon the appearance of agency. For example, Mrs. O'Malley justifiably relied upon PRINCESS'S representations in deciding to purchase a cruise on the *Emerald Princess*.

71. PRINCESS, through its Medical Personnel, based upon Plaintiff's knowledge at this time includes Dr. Jericho Bautista, Dr. Martelie Angela Rhius, Joshua Lee Tindel PARA, Deshan Govender RN, Natahsa Smith RN, Margaret Lyall Erasmus RN, Mark Anthony Sheehan PARA, and the ship's Senior Doctor, owed Mrs. O'Malley the duty of exercising reasonable care under the circumstances. In particular, as Mrs. O'Malley suffered a stroke onboard the *Emerald Princess* and was taken to the ship's medical center, PRINCESS owed Mrs. O'Malley the duty of protecting her from injury relating to her emergent condition, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.

72. PRINCESS, through its Medical Personnel, based upon Plaintiff's knowledge at this time includes Dr. Jericho Bautista, Dr. Martelie Angela Rhius, Joshua Lee Tindel PARA, Deshan Govender RN, Natahsa Smith RN, Margaret Lyall Erasmus RN, Mark Anthony Sheehan PARA, and the ship's Senior Doctor, breached its duty of protecting Mrs. O'Malley from injury relating to her emergent condition, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances. PRINCESS, through its Medical Personnel, breached its duty in one or more of the following ways:

a. violated the International Cruise Line Bill of Rights, which states that passengers have "[t]he right to disembark a docked ship if essential provisions such as ... access to medical care cannot be adequately provided onboard," by keeping Mrs. O'Malley on the vessel against her will;

b. failed to properly assess the condition of Mrs. O'Malley;

c. failed to properly diagnose Mrs. O'Malley;

d. failed to timely diagnose Mrs. O'Malley;

e. failed to properly treat Mrs. O'Malley;

f. failed to perform or arrange for appropriate diagnostics testing given Mrs. O'Malley's condition;

g. failed to obtain consultations with appropriate specialists;

h. failed to properly monitor Mrs. O'Malley;

i. failed to air-evacuate Mrs. O'Malley from the ship so that she could promptly receive treatment;

j. failed to timely divert the ship so that Mrs. O'Malley could promptly receive treatment;

k. failed to contact the United States Coast Guard and/or the Mexican Coast Guard/Navy regarding the need for an air evacuation;

l. failed to properly or timely consult qualified shore-based personnel regarding Mrs. O'Malley's condition;

m. failed to obtain a proper medical opinion regarding Mrs. O'Malley's condition;

n. failed to timely utilize "Telemedicine" and other resources on the vessel to properly assess Mrs. O'Malley's condition;

o. failed to develop and institute adequate procedures and policies to address Mrs. O'Malley 's medical situation;

p. failed to appreciate the severity of Mrs. O'Malley's worsening condition;

q. failed to perform any procedure to Mrs. O'Malley 's medical benefit;

r. failed to properly ascertain sufficient information to determine where Mrs. O'Malley should be transferred;

s. negligently elected to send Mrs. O'Malley to a medical facility in Mexico that was unequipped and unable to treat her condition;

t. failed to ascertain whether the medical facility in Mexico was capable of treating its passenger prior to disembarking her to the facility;

u. failed to arrange for any follow up transportation for Mrs. O'Malley after disembarking her in Mexico, effectively stranding her in Mexico for thirteen days; and

v. deviated from the standard of care for treating patients in Mrs. O'Malley's condition.

73. PRINCESS, through its Medical Personnel, based upon Plaintiff's knowledge at this time includes Dr. Jericho Bautista, Dr. Martelie Angela Rhius, Joshua Lee Tindel PARA, Deshan Govender RN, Natahsa Smith RN, Margaret Lyall Erasmus RN, Mark Anthony Sheehan PARA, and the ship's Senior Doctor, knew or reasonably should have known about these conditions and failures, but failed to correct them prior to the incident that injured Mrs. O'Malley. These conditions and failures were longstanding and obvious to PRINCESS.

74. As a direct and proximate result of PRINCESS breaching its duty to Mrs. O'Malley, she has been left with permanent devastating cognitive and neurological deficits. If Mrs. O'Malley had received appropriate care and treatment onboard or been timely evacuated from the ship, she would not have suffered such devastating injuries to her brain and body.

WHEREFORE, Plaintiff, ANN O'MALLEY, respectfully requests that this Court enter judgment against PRINCESS for compensatory damages, interest, court costs, and all other relief recoverable under law or as this Court deems just and proper.

**Demand for Jury Trial**

Plaintiff demands a trial by jury on all claims set forth herein.

Dated: November 20, 2025

Respectfully submitted,

By: */s/ Thomas B. Scolaro, Esq.*
THOMAS B. SCOLARO, ESQ.
Fla. Bar No. 178276
Email: tom@usinjury.law
SCOLARO LAW
1728 Coral Way, Suite 702
Miami, Florida 33145
Telephone: (305) 424-2300
Facsimile: (305) 424-2140
*Attorneys for Plaintiff*

By: */s/ Laurence M. Krutchik, Esq.*
LAURENCE M. KRUTCHIK, ESQ.
Fla. Bar No. 0069449
LMK LEGAL
7450 SW 172nd Street
Palmetto Bay, Florida 33157
Email: LMK@LMKLEGAL.COM
Telephone: (305) 537-6866
Facsimile: (305) 433-2334
*Co-Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 20, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served on this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specific, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: *<u>/s/ Laurence M. Krutchik, Esq.</u>*
LAURENCE M. KRUTCHIK, ESQ.

**SERVICE LIST**

Michael J. Drahos, Esq.
Email: michael.drahos@gray-robinson.com
Ashley Genoese, Esq.
Email: ashley.genoese@gray-robinson.com
GRAY ROBINSON
515 North Flagler Drive, Ste. 1425
West Palm Beach, FL 33401
561-268-5727
Fax: 561-268-5745
*Attorneys for Defendant*