UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.

GARY SIMONTON,

Plaintiff,

v.

PRINCESS CRUISE LINES, LTD.
and DR. DUSAN SEKULIC,

Defendant.
_______________________________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff sues Defendant and alleges:

## THE PARTIES

1. Plaintiff, Gary Simonton, is a resident of Texas.

2. Defendant, Princess Cruise Lines, Ltd. (hereinafter referred to as "Princess"), is a foreign corporation with its principal place of business in California. Princess is registered to conduct business in the state of Florida and maintains offices in the state of Florida.

3. At all times material, Princess is a common carrier engaged in the business of marketing, selling and operating a cruise line out of various ports within the continental United States, including Florida. Princess derives substantial revenues from cruises originating and terminating in various ports in the State of Florida.

4. At all times material, Princess owned, managed, operated, maintained, supervised and/or controlled, or was the owner *pro hac vice* and/or charterer of the ocean-going passenger vessel known as the *Majestic Princess.*

5. At all times material, PRINCESS employed and/or contracted with the vessel's doctors and nurses ("Medical Staff") to work as the ship's doctors and nurses aboard the *Majestic Princess*.

6. Defendant, Dr. Dusan Sekulic ( also referred to as "Medical Defendant"), was the ship's doctor aboard the *Majestic Princess* who saw, examined, treated, consulted and/or oversaw the medical care and condition of Plaintiff while aboard the *Majestic Princess*. Upon information and belief, Dr. Dusan Sekulic is a citizen of Serbia.

**JURISDICTION AND VENUE**

7. The matter in controversy exceeds, exclusive of interests and costs, the sum specified by 28 U.S.C. § 1332. In the alternative, if diversity jurisdiction does not apply, then this matter falls under the admiralty and maritime jurisdiction of this Court.

8. This action is being pursued in this Court, as opposed to state court as otherwise allowed by the Saving to Suitors Clause of 28 U.S.C. §1333 because Princess unilaterally inserts a forum clause into its cruise tickets that requires its passengers to file cruise-related suits *only in this Federal District and Division,* as opposed to any other place in the world.

9. Princess, at all material times, personally or through an agent:

    a. Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

    b. Was engaged in substantial activity within this state;

    c. Operated vessels in the waters of this State;

    d. Committed one or more of the acts stated in Florida Statutes §§ 48.081, 48.181 or 48.193; and/or;

    e. The acts of Princess set out in this Complaint occurred in whole or in part in this county and/or state.

10. At all times material hereto, Dr. Dusan Sekulic, engaged in substantial and not isolated activities in Florida. Such activities and contacts, assessed over a period of time and considered

collectively, establish jurisdiction under Florida's long arm statute, based on the following:

a. Dr. Dusan Sekulic agreed to insure an entity located in Florida (Princess) for foreseeable risks. Specifically, upon information and belief, the Medical Defendant entered into agreements with Princess to indemnify it and insure it. As such, because they contractually agreed to indemnify Princess for any harm resulting from his services (including medical malpractice), agreed to insure a person and/or risk in Florida under Florida Statute § 48.193(1)(a)(4). Section 48.193(1)(a)(4) provides that "any person… who contracts to insure any person, property, *or* risk located in Florida" is subject to the jurisdiction of Courts in Florida. *Id.*

b. Dr. Dusan Sekulic appointed Princess as his exclusive agent in Florida, giving Princess "absolute and complete control" of all claims brought against him in Florida. In consideration of working as a ship's doctor for Princess, signed indemnity agreement with Princess. In each indemnity agreement, each appointed Princess and Princess' insurer as his exclusive agent, giving Princess absolute and complete control of the defenses of all proceedings against Dr. Dusan Sekulic . By virtue of such appointments and giving Princess a *quasi*-power of attorney, he purposefully directed his activities to this forum. In this case, under the aforementioned agreement, Princess controls and pays an attorney(s) in Florida for Dr. Dusan Sekulic. Accordingly, each appointed an agent in Florida (other than their attorney(s)) to assume complete control of his defenses in this case.

c. At all times material hereto, Dr. Dusan Sekulic worked as ship's doctors aboard Princess' vessels (and/or other cruise lines' vessels), while the vessels were in Florida ports. During each of these times, while the vessel was in a Florida port or in Florida territorial waters, Dr. Dusan Sekulic was expected to and/or did in fact provide medical care to passengers and crewmembers in Florida. As such, harm resulting from his services performed in Florida was a foreseeable risk in Florida, for which Dr. Dusan Sekulic insured Princess in Florida. As stated, this grants the Court personal jurisdiction over Dr. Dusan Sekulic under Florida Statute § 48.193(1)(a)(4). Alternatively, their continuing agreements to insure Princess should be considered collectively with all of his other contacts (as described herein) to establish jurisdiction under Florida's general jurisdiction statute, §48.193(2).

d. At all times material hereto, Dr. Dusan Sekulic provided medical care to passengers and crew in Florida ports and/or in Florida territorial waters, while working and being compensated as a cruise ship doctor.

11. At all times material hereto, Dr. Dusan Sekulic entered into an agreement with Princess involving transaction's in the aggregate not less than $250,000, and agreeing to submit to jurisdiction in the Florida in accordance with Florida Statute §685.102.

12. Defendants are subject to the jurisdiction of the Courts of this State.

13. The causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

## GENERAL ALLEGATIONS

14. Princess, as a common carrier, was engaged in the business of providing to the public, and to the Plaintiff in particular, for compensation, vacation cruises aboard the vessel, *Majestic Princess*.

15. As part of providing vacation cruises, Princess advertised, marketed and promoted that a competent physician and ship's medical center are available in the event passengers need medical care for customary charges[1]. Princess further advertised, marketed and promoted that as a member of Cruise Line International Association, and it had adopted the Cruise Industry Passenger Bill of Rights which guarantees its passengers, including the Plaintiff, the right to have "full-time, professional emergency medical attention."[2]

16. Princess employed and/or contracted with and/or provided the Medical Staff, including specifically the Medical Defendant, on board the vessel in connection with its operation of the vessel as part of Princess' business of operating cruise ships and not solely for the convenience of passengers.

17. At all times material, the Princess relied upon and directed the Medical Staff, including specifically the Medical Defendant, to perform specified duties to assist them in complying with its regulatory duties and obligations, including but not limited to those set forth by the U.S. Public Health Service, Drug Enforcement Agency, Coast Guard and Center for Disease Control. Princess also relied upon and directed Medical Staff, including specifically the Medical Defendant, to fulfill the requirements of the vessel's flag state, to carry a licensed

---

[1] https://www.princess.com/en-us/faq/onboard-experience
[2] https://www.princess.com/en-us/legal/bill-of-rights

physician as well as those of the United States under both the Cruise Vessel Safety and Security Act, and the general maritime requirement of maintenance and cure owed to its seamen operating the vessel.

18. At all material times, Princess charged money to passengers for the medical services it provided. Thereby, Princess is in the business of providing medical services to passengers for profit, and/or Princess is in the business of operating a floating hospital for its own profit. Herein, Princess charged Plaintiff a fee for the medical treatment performed by the Medical Staff, including specifically the Medical Defendant, aboard its vessel and for the medicine provided to the Plaintiff. All of the charges for the medical treatment and medicine were charged directly to Plaintiff's onboard credit program (or the equivalent shipboard credit card) linked to Princess.

19. All in all, Princess is in the business of providing medical care. Like other amenities offered aboard its vessels, Princess also offers to passengers modern medical facilities onboard its ships for profit. *See, Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1244 n. 14 (11th Cir. 2014)

20. At all times material hereto, Princess owned, operated, managed, maintained and/or controlled the medical equipment in the ship's medical center aboard the vessel *Majestic Princess*.

21. At all times material hereto, the Medical Staff, including specifically the Medical Defendant, were in the regular, full-time employment of the ship, as salaried member(s) of the crew, subject to the ship's discipline and the Master's orders, and also under the control of Princess.

22. At all times material hereto, Princess had the ability to monitor and control each and every step taken by any crewmember (including the Medical Staff, and specifically the Medical Defendant) working in the medical department via telephone, videoconference, Zoom, or otherwise. This technology is generally referred to as "Face to Face Telemedicine." Such

modern means of communication make the location of the cruise ship effectively irrelevant and allows Princess to directly control the medical care on the ship.

23. At all times material hereto, Princess had control and/or the right to control any and all crewmembers working in Princess' medical department, including the Medical Staff, and specifically the Medical Defendant in its medical center in the exercise of their job duties, including the treatment of patients. Princess exercised such control and/or right of control in many different ways, including, but not limited to the following:

  a. Setting the standards, criteria, and procedures for selecting and hiring said personnel;

  b. Credentialing, evaluating, training, and coaching shipboard medical personnel;

  c. Acting as a resource to the shipboard medical personnel, and providing guidance and instruction in the event of a medical emergency;

  d. Establishing, adopting, and enforcing rules, regulations and protocols for the treatment of patients at its medical center;

  e. Maintaining and/or exercising the right to both hire and fire said personnel;

  f. Establishing the amount, method, and manner of payment for said personnel;

  g. Paying a salary, bonus and benefits to said personnel;

  h. Establishing and enforcing the terms of employment for such personnel, including their hours, job duties and the details of their work;

  i. Setting the standards and criteria to determine which patients were to be treated by said personnel;

  j. Determining and setting the specific charges for treatment for its passengers and requiring that all such charges be paid directly to Defendant on the passenger's shipboard charge card;

  k. Supplying the tools, workplace and equipment for said personnel to perform their job duties;

  l. Determining and selecting the medications, drugs, and supplies to be used in the ship's medical center; purchasing said medications, drugs and supplies to stock the medical center; setting the prices for the use and or sale of such medications, drugs and supplies to

passengers and requiring the passengers to pay it directly for such medical, drugs and supplies on their shipboard charge cards;

m. Advertising the existence of the medical center as part of its marketing campaigns in order to attract passengers;

n. Treating said personnel as members of its crew, subject to the vessel's rules and regulations and the authority of its officers and requiring them to carry out crew functions and wear crew uniforms;

o. Requiring said personnel to take specific courses and training, including those offered by the Defendant;

p. Agreeing to staff, equip and operate the medical facilities and the provision of medical services therein under the industry Guidelines issued by the American College of Emergency Physicians and requiring its medical personnel to practice medicine and treat patients in accordance with the requirements of said Guidelines;

q. Through the use of its shoreside medical department, which is staffed with various doctors and other medical personnel that can communicate with its ships literally anywhere in the world electronically;

r. By entering into contracts with various land based hospitals, to provide medical expertise and requiring their shipboard medical personnel to utilize such services in the treatment of passengers and crew in specified situations; and/or

s. Through the use of electronic technology, including video-conferencing and tele-medicine with their shoreside medical department and hospital contract providers to control the treatment provided.

24. At all times material hereto, Princess was responsible for, and liable for, the actions of the Medical Staff, including specifically the Medical Defendant, with respect to treatment, or lack of treatment, of the Plaintiff based on a theory of *respondeat superior* and/or under the principle of actual and/or apparent agency.

25. At all times material hereto, the Medical Staff, including specifically the Medical Defendant, were direct employees and/or actual agents and/or apparent agents of Princess, and at all times acted within the course and scope of their employment and/or agency agreement and/or relationship.

26. At all times material hereto, the Medical Staff, including specifically the Medical Defendant, were represented to the Plaintiff and the ship's passengers as employees of Princess in that:

a. They worked in the ship's medical center aboard the vessel, which was owned and/or operated by Princess;

b. They wore a ship's uniform provided by Princess;

c. They represented themselves as the "ship's medical crew" to the Plaintiff;

d. The ship's doctors were called ship's officer(s) by Princess, the ship's officers and the crew;

e. They ate with the ship's crew;

f. They were under the commands of the ship's officers and followed all of the master's rules and regulations;

g. Their charges for medical treatment and medicine were charged directly to passenger's onboard credit program (or the equivalent shipboard credit card) linked to Princess;

h. They communicated directly with Princess (to the captain and to unknown persons in Princess' shoreside office) while providing treatment to the Plaintiff;

i. The literature provided by Princess and its representatives showed the doctor(s) and nurse(s) as crewmembers and employees of Princess;

j. There were Princess insignias in various places inside the ship's medical center where the Medical Staff, including specifically the Medical Defendant worked;

k. They were employed full-time by Princess;

l. They were paid a salary by Princess; and/or

m. They spoke to the Plaintiff as though they had authority to do so by Princess.

27. At no time did Princess represent to the Plaintiff in particular, or the ship's passengers in general, in any meaningful way, that the Medical Staff, including specifically the Medical Defendant, were not agents or employees of Princess.

28. The Plaintiff reasonably relied on the representation of Princess that the Medical Staff were employed by Princess and that the vessel had a medical center staffed to provide passengers with

"full-time, profession emergency medical attention" as guaranteed in the Passenger Bill Rights adopted by Princess. This reliance was detrimental because it resulted in the Plaintiff deciding to book and participate in the cruise, presenting to the infirmary and receiving improper and/or substandard medical treatment. Had the Plaintiff not detrimentally relied on the representations of Princess and the negligent medical treatment given by the Medical Staff, including specifically the Medical Defendant, Plaintiff would not have been injured.

29. At all times material hereto, Princess knew of the agency representations by the Medical Staff, including specifically the Medical Defendant, and allowed them to represent themselves as such.

30. At all times material, the *Majestic Princess*, was in navigable waters and Plaintiff was lawfully aboard the vessel.

**SHIPBOARD MEDICAL INCIDENT**

31. On or about August 14, 2024, the Plaintiff presented at the Medical Center and came under the care of the Medical Defendant. Plaintiff reported that he felt ill, weak and had a fever. In the Patient Registration Form, Plaintiff wrote that he had an artificial heart valve (as a result of an aortic aneurysm) and was taking Warfarin and Metoprolol. Plaintiff and his wife also verbally advised the Medical Defendant of Plaintiff's medical history and medications.

32. The Medical Defendant diagnosed the Plaintiff with a urinary tract infection and pneumonia. The Medical Defendant prescribed and administered to the Plaintiff several antibiotics and a steroid, specifically: Levofloxacin (tablet), Ceftriaxone (injection); and Dexamethasone (injection).

33. Prior to receiving any medications, both the Plaintiff and his wife, asked the Medical Defendant if it was safe for Plaintiff to receive the medications because of the potential interaction with his current medications and his artificial heart valve. The Medical Defendant

assured them that the prescribed medications were safe. Relying on these representations, Plaintiff received the recommended medications.

34. In reality, each of the medications prescribed and administered by the Medical Defendant have a known major drug-drug interaction which enhances the effects of Warfarin, leading to increased International Normalized Ratio ("INR"), over-anticoagulation, blood thinning and bleeding risks, and in severe cases, intracranial hemorrhage. Any one of these prescribed medications could individually cause these adverse effects. Here, the Medical Defendant administered all three medications to the Plaintiff.

35. Within hours of receiving the medication, Plaintiff began complaining of pain in his leg. The Medical Defendant ignored and/or failed to recognize the significance of Plaintiff's complaints.

36. After remaining in the Medical Center overnight, on August 15, 2024, the Plaintiff was discharged back to his stateroom via wheelchair, still reporting leg pain. A symptom which the Medical Defendant again ignored.

37. On August 16, 2024, Plaintiff returned to the Medical Center via wheelchair complaining of leg pain and inability to bear weight due to severe pain. Plaintiff again came under the care of Medical Defendant. Plaintiff's leg was observed to be red, hot to the touch, swollen, with the diameter of the rush approximately 5 – 7 cm. Again, the Medical Defendant failed to recognize the significance of Plaintiff's symptoms and misdiagnosed the Plaintiff with a skin condition and cellulitis. Plaintiff was given topical medication (hydrocortisone and fusidic acid ointment) to apply to his leg and discharged from the Medical Center.

38. In reality, Plaintiff's symptoms were evidence of a very high INR which can lead to bleeding into the muscle or subcutaneous tissue of the leg.

39. Trusting and relying on the expertise of the Medical Defendant, the Plaintiff remained in his cabin taking/applying the medication prescribed.

40. Plaintiff's condition continued to worsen and he required a wheelchair to disembark the vessel on August 18, 2024. Plaintiff proceeded to the airport and flew home the same day. By the time the Plaintiff's landed in Texas, Plaintiff was unable to walk or bear any weight on his legs and was in severe pain. He was also confused, disoriented and speaking incoherently.

41. Alarmed by his condition, his family took the Plaintiff straight to the emergency. Plaintiff was diagnosed with an acute spontaneous right cerebellar hemorrhage with brainstem compression and obstructive hydrocephalus, and acute hypoxemic respiratory failure.

42. Plaintiff required urgent neurosurgical intervention including specifically a posterior fossa decompressive craniotomy (surgery to remove the lower part of the skull to relieve pressure) and placement of a right frontal external ventricular drain ("EVD") (drain in the right frontal horn of the brain's lateral ventricle to relieve intracranial pressure).

43. As a direct result of the foregoing , the Plaintiff has required extensive medical care and is left with significant permanent physical and cognitive deficits.

44. The treatment that the Plaintiff received aboard the *Majestic Breakaway* fell below the standard of care, was mismanaged and/or inadequate leading to permanent significant injuries to the Plaintiff.

## COUNT I - VICARIOUS LIABILITY AGAINST PRINCESS FOR MEDICAL NEGLIGENCE BASED *RESPONDEAT SUPERIOR*

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through forty-four (44) as though alleged originally herein.

45. At all times material hereto, Princess owned, operated, controlled, and/or maintained the medical center aboard the *Majestic Princess*, and was responsible for overseeing the operations

of the shipboard medical center including the selecting, purchasing, and maintaining of the medical equipment and medications contained therein; recruitment, credentialing and staffing of shipboard medical centers with physicians and nurses; evaluations, training and coaching of shipboard physicians; and acting as a resource to the shipboard medical personnel and providing guidance and instruction in the event of a medical emergency in said medical center.

46. At all times material, the Medical Staff, and specifically the Medical Defendant, were employees of Princess which is vicariously liable for the negligent treatment of Plaintiff under the legal principles under *respondeat superior* and the principles set forth in *Franza v. Royal Caribbean Cruise Ltd.*, 772 F.3d 1225 (11th Cir. 2014).

47. At all times material hereto, the Medical Staff, and specifically the Medical Defendant, were in the regular, full-time employment of the ship, as a salaried member of the crew, were identified as officers of the vessel, subject to the ship's discipline and the Master's orders, and also under the control of Princess.

48. At all times material, Princess acknowledged that the Medical Staff, and specifically the Medical Defendant, would act on Princess' behalf. The Medical Staff, and specifically the Medical Defendant, accepted the undertaking.

49. At all times material hereto, the Medical Staff, and specifically the Medical Defendant, were acting within the scope of their employment and/or agency with Princess.

50. Princess is vicariously liable under the principles of *respondeat superior,* for the acts and omissions of its employees, servants, actual agents, ostensible agents, and/or representatives, including but not limited to the Medical Staff, and specifically the Medical Defendant, who breached its duty to exercise reasonable care under the circumstances owed to the Plaintiff as follows:

a. Failure to properly conduct a comprehensive work-up;

b. Failure to properly take into account the Plaintiff's multiple comorbidities, including but not limited to his medications when evaluating and treating Plaintiff;

c. Failure to consider and explore other potential diagnoses given Plaintiff's symptoms and comorbidities;

d. Failure to establish a differential diagnosis(es) given the Plaintiff's multiple comorbidities, symptoms and conditions;

e. Misdiagnosing Plaintiff's medical condition;

f. Failure to recognize and appreciate the seriousness and gravity of the Plaintiff's condition and symptoms;

g. Administering medications with known major drug-drug interactions;

h. Failure to keep the Plaintiff in the infirmary for proper monitoring given his symptoms and comorbidities;

i. Failure to test/monitor INR;

j. Failure to perform ultrasound to properly rule out DVT or hematoma;

k. Failure to hold/adjust Warfarin;

l. Failure to conduct examination for signs of bleeding verse infection;

m. Failure to differentiate DVT verse cellulitis verse bleed;

n. Failure to administer vitamin K supplementation;

o. Failure to check/monitor renal and liver functions;

p. Failure to medically evacuate;

q. Failure to timely obtain shoreside consultation with the appropriate medical expert(s);

r. Failure to provide competent medical staff capable of providing "full-time professional emergency medical attention" as advertised and guaranteed on Princess' website and as set forth in the Passenger Bill of Rights adopted by Princess;

s. Failure to promptly provide Plaintiff with timely, proper and/or adequate medical care and attention;

t. Failure to timely and/or properly assess and diagnosis Plaintiff and identify emergent, urgent condition of the Plaintiff in a timely manner, in order to facilitate optimum levels of health care;

u. Failure to understand and react effectively to Plaintiff's medical needs given his symptoms and comorbidities and to perform accurate and ongoing assessments of Plaintiff's condition;

v. Failure to practice medicine according to generally accepted standards of care;

w. Failure to adhere to industry standards including but not limited to the American College of Emergency Physicians Cruise Ship Guidelines; and/or

x. A breach of the prevailing professional standard of care for said health care providers, to wit: that level of care, skill and treatment which, in light of all relevant surrounding circumstances, as recognized as acceptable and appropriate by a reasonably prudent similar health care provider.

51. As a direct and proximate result of the negligence of the Medical Staff, and specifically the Medical Defendant, for which Princess is vicariously liable, the Plaintiff was unable to obtain the prompt, timely, proper and adequate medical care he required resulting in devastating and life altering injuries. Had the Plaintiff received the appropriate care and treatment from the Medical Staff, and specifically the Medical Defendant, it is more likely than not he would not have developed acute spontaneous right cerebellar hemorrhage with brainstem compression and obstructive hydrocephalus, and acute hypoxemic respiratory failure.

52. As a direct and proximate result of the negligence of the Medical Staff, and specifically the Medical Defendant, as described above, for which Princess is vicariously liable, the Plaintiff was injured in and about his body and extremities, including severe physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, disability, impairment, loss of past earnings and impairment of his future working ability and earning capacity, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions, incurred medical expenses in the past and

will continue to incur such expenses in the future. All of these damages are permanent and continuing in nature. Plaintiff also lost the money paid for the cruise, incurred extra expenses such as transportation and had the enjoyment of the cruise ruined or damaged.

WHEREFORE, Plaintiff, respectfully requests that this Court enter judgment against Princess for compensatory damages, interest, court costs, and all other relief recoverable under general maritime law or as this Court deems just and proper.

**COUNT II**
**VICARIOUS LIABILITY AGAINST PRINCESS FOR MEDICAL NEGLIGENCE BASED ON ACTUAL AGENCY**

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs (1) through forty-four (44) as though alleged originally herein as though alleged originally herein.

53. At all times material hereto, Princess owned, operated, controlled, and/or maintained the medical center aboard the *Majestic Princess*, and was responsible for overseeing the operations of the shipboard medical center including the selecting, purchasing, and maintaining of the medical equipment and medications contained therein; recruitment, credentialing and staffing of shipboard medical centers with physicians and nurses; evaluations, training and coaching of shipboard physicians; and acting as a resource to the shipboard medical personnel and providing guidance and instruction in the event of a medical emergency in said medical center.

54. At all times material, the Medical Staff, and specifically the Medical Defendant, were aboard the vessel and were acting within the scope of their employment.

55. At all times material, Princess acknowledged that the Medical Staff, and specifically the Medical Defendant, would act on Princess' behalf and the Medical Staff, and specifically the Medical Defendant, accepted the undertaking.

56. At all times material, the Medical Staff, and specifically the Medical Defendant, were the

actual agents, servants, and/or employees of Princess which was therefore vicariously liable for the negligent treatment of Plaintiff under *respondeat superior* and the principles set forth in *Franza v. Royal Caribbean Cruise Ltd.*, 772 F.3d 1225 (11th Cir. 2014).

57. At all times material, the Medical Staff, and specifically the Medical Defendant, owed Plaintiff a duty of reasonably care under the circumstances.

58. Princess, is vicariously liable under the principles of agency for the acts and omissions of its employees, servants, actual agents, ostensible agents, and/or representatives, including but not limited to the Medical Staff, and specifically the Medical Defendant, and breached its duty to exercise reasonable care under the circumstances owed to the Plaintiff as follows:

a. Failure to properly conduct a comprehensive work-up;

b. Failure to properly take into account the Plaintiff's multiple comorbidities, including but not limited to his medications when evaluating and treating Plaintiff;

c. Failure to consider and explore other potential diagnoses given Plaintiff's symptoms and comorbidities;

d. Failure to establish a differential diagnosis(es) given the Plaintiff's multiple comorbidities, symptoms and conditions;

e. Misdiagnosing Plaintiff's medical condition;

f. Failure to recognize and appreciate the seriousness and gravity of the Plaintiff's condition and symptoms;

g. Administering medications with known major drug-drug interactions;

h. Failure to keep the Plaintiff in the infirmary for proper monitoring given his symptoms and comorbidities;

i. Failure to test/monitor INR;

j. Failure to perform ultrasound to properly rule out DVT or hematoma;

k. Failure to hold/adjust Warfarin;

l. Failure to conduct examination for signs of bleeding verse infection;

m. Failure to differentiate DVT verse cellulitis verse bleed;

n. Failure to administer vitamin K supplementation;

o. Failure to check/monitor renal and liver functions;

p. Failure to medically evacuate;

q. Failure to timely obtain shoreside consultation with the appropriate medical expert(s);

r. Failure to provide competent medical staff capable of providing "full-time professional emergency medical attention" as advertised and guaranteed on Princess' website and as set forth in the Passenger Bill of Rights adopted by Princess;

s. Failure to promptly provide Plaintiff with timely, proper and/or adequate medical care and attention;

t. Failure to timely and/or properly assess and diagnosis Plaintiff and identify emergent, urgent condition of the Plaintiff in a timely manner, in order to facilitate optimum levels of health care;

u. Failure to understand and react effectively to Plaintiff's medical needs given his symptoms and comorbidities and to perform accurate and ongoing assessments of Plaintiff's condition;

v. Failure to practice medicine according to generally accepted standards of care;

w. Failure to adhere to industry standards including but not limited to the American College of Emergency Physicians Cruise Ship Guidelines; and/or

x. A breach of the prevailing professional standard of care for said health care providers, to wit: that level of care, skill and treatment which, in light of all relevant surrounding circumstances, as recognized as acceptable and appropriate by a reasonably prudent similar health care provider.

59. As a direct and proximate result of the negligence of the Medical Staff, and specifically the Medical Defendant, as described above, for which Princess is vicariously liable, the Plaintiff was unable to obtain the prompt, timely, proper and adequate medical care he required resulting in devastating and life altering injuries. Had the Plaintiff received the appropriate care and treatment from the Medical Staff, and specifically the Medical Defendant, it is more likely than

not he would not have developed acute spontaneous right cerebellar hemorrhage with brainstem compression and obstructive hydrocephalus, and acute hypoxemic respiratory failure.

60. As a direct and proximate result of the negligence of the Medical Staff, and specifically the Medical Defendant, as described above, for which Princess is vicariously liable, the Plaintiff was injured in and about his body and extremities, including severe physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, disability, impairment, loss of past earnings and impairment of his future working ability and earning capacity, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions, incurred medical expenses in the past and will continue to incur such expenses in the future. All of these damages are permanent and continuing in nature. Plaintiff also lost the money paid for the cruise, incurred extra expenses such as transportation and had the enjoyment of the cruise ruined or damaged.

WHEREFORE, Plaintiff, respectfully requests that this Court enter judgment against the Princess, for compensatory damages, interest, court costs, and all other relief recoverable under general maritime law or as this Court deems just and proper.

**COUNT III - VICARIOUS LIABILITY AGAINST PRINCESS FOR MEDICAL NEGLIGENCE BASED ON APPARENT AGENCY**

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through forty-four (44) as though alleged originally herein.

61. At all times material, Princess held out its Medical Staff, and specifically the Medical Defendant as being its employees who work in the Defendant's "medical centers" on the vessel. Princess promotes its Medical Staff, including the Medical Defendant, and represents them as being its employees through brochures, internet advertising, and on the vessel. Princess

held out its staff, including the Medical Staff as being direct employees or its actual agents.

62. Princess promotes the idea that the Medical Staff who work in its "medical centers" are employed by Princess as part of a marketing tool to induce passengers, such as the Plaintiff, to buy cruises on its ships, particularly because the cruise line goes to various foreign ports that may not have adequate medical care.

63. Princess manifested to the Plaintiff in this case that its Medical Staff, and specifically the Medical Defendant, were acting as its employees and/or actual agents in various ways, including but not limited to the following:

a. The doctors and nurses worked at what Princess describes in its advertising as its "medical centers";

b. The "medical centers" are owned and operated by Princess which pays to stock the "medical centers" with all supplies, various medicines and equipment;

c. The passenger is billed directly by Princess through the passengers' Sail Card, whereas the "medical staff," including the doctor and nurse, are paid salaries and commission by Princess to work in the "medical centers";

d. Medical records and forms, including patient registration which are given to guests in the medical center, used Princess' letterhead and logo;

e. That the Medical Staff were given uniforms to wear that include name tags, and which have Princess' name and logo and were required by Princess to be worn by the Medical Staff;

f. That the Medical Staff are considered to be Officers on board the vessel and a member of the crew, and were introduced to the passengers as Ship's Officers and members of the crew;

g. That Princess put the ship's physician and nurse under the command of the ship's superior officers, including the Master of the ship;

h. That Princess requires the Medical Staff to provide services in the ship's "medical center," which is identified as Princess' facility, and when Plaintiff went to the ship's medical center to be seen for his condition, he detrimentally relied upon the representations that it was owned and operated by Princess and staffed with doctors and nurses, who had been selected and vetted by Princess. Plaintiff would not have authorized the Medical Staff to treat him if they had known that the Medical Staff were not employees of Princess;

i. There were Princess' insignias and logos in various locations throughout the medical center; and/or

j. The Medical Staff spoke to the Plaintiff as though they had the authority to do so on behalf of Princess.

64. At no time did Princess represent to the Plaintiff in particular, or the ship's passengers in general, in any meaningful way that the Medical Staff, and specifically the Medical Defendant, were not agents or employees of Princess.

65. Princess is estopped to deny that the Medical Staff, and specifically the Medical Defendant, were its apparent agent and/or apparent employees and/or apparent servants.

66. At all times material, Plaintiff detrimentally relied upon the above described representations of Princess by purchasing and participating in the subject cruise and by seeking and following the medical advice and accepting the treatment provided by Medical Staff, and specifically the Medical Defendant, reasonably believing that because it was owned and operated by Princess, the Medical Staff, and specifically the Medical Defendant, were its employees and had been properly vetted, selected and trained and were well-qualified doctors and nurses.

67. At all times material hereto, the Plaintiff relied upon the above described representations of Princess, which gave rise to his reasonable belief that the Medical Staff, and specifically the Medical Defendant, in the medical center were its agents and/or employees, which induced their reliance upon such appearance of agency and accordingly, Princess is vicariously liable for the negligence of its apparent agents in treating Plaintiff and set forth above incorporated herein by reference under the principles of apparent agency set forth in *Franza v. Royal Caribbean Cruise Ltd.*, 772 F.3d 1225 (11th Cir. 2014).

68. Princess is vicariously liable under the principles of apparent agency for the acts and omissions of its apparent agents, servants, and employees, including but not limited to the Medical Staff,

and specifically the Medical Defendant, and breached its duty to exercise reasonable care under the circumstances owed to the Plaintiff as follows:

a. Failure to properly conduct a comprehensive work-up;

b. Failure to properly take into account the Plaintiff's multiple comorbidities, including but not limited to his medications when evaluating and treating Plaintiff;

c. Failure to consider and explore other potential diagnoses given Plaintiff's symptoms and comorbidities;

d. Failure to establish a differential diagnosis(es) given the Plaintiff's multiple comorbidities, symptoms and conditions;

e. Misdiagnosing Plaintiff's medical condition;

f. Failure to recognize and appreciate the seriousness and gravity of the Plaintiff's condition and symptoms;

g. Administering medications with known major drug-drug interactions;

h. Failure to keep the Plaintiff in the infirmary for proper monitoring given his symptoms and comorbidities;

i. Failure to test/monitor INR;

j. Failure to perform ultrasound to properly rule out DVT or hematoma;

k. Failure to hold/adjust Warfarin;

l. Failure to conduct examination for signs of bleeding verse infection;

m. Failure to differentiate DVT verse cellulitis verse bleed;

n. Failure to administer vitamin K supplementation;

o. Failure to check/monitor renal and liver functions;

p. Failure to medically evacuate;

q. Failure to timely obtain shoreside consultation with the appropriate medical expert(s);

r. Failure to provide competent medical staff capable of providing "full-time professional emergency medical attention" as advertised and guaranteed on Princess' website and as set forth in the Passenger Bill of Rights adopted by Princess;

s. Failure to promptly provide Plaintiff with timely, proper and/or adequate medical care and attention;

t. Failure to timely and/or properly assess and diagnosis Plaintiff and identify emergent, urgent condition of the Plaintiff in a timely manner, in order to facilitate optimum levels of health care;

u. Failure to understand and react effectively to Plaintiff's medical needs given his symptoms and comorbidities and to perform accurate and ongoing assessments of Plaintiff's condition;

v. Failure to practice medicine according to generally accepted standards of care;

w. Failure to adhere to industry standards including but not limited to the American College of Emergency Physicians Cruise Ship Guidelines; and/or

x. A breach of the prevailing professional standard of care for said health care providers, to wit: that level of care, skill and treatment which, in light of all relevant surrounding circumstances, as recognized as acceptable and appropriate by a reasonably prudent similar health care provider.

69. As a direct and proximate result of the negligence of the Medical Staff, and specifically the Medical Defendant, as described above, for which Princess is vicariously liable, the Plaintiff was unable to obtain the prompt, timely, proper and adequate medical care he required resulting in devastating and life altering injuries. Had the Plaintiff received the appropriate care and treatment from the Medical Staff, and specifically the Medical Defendant, it is more likely than not he would not have developed acute spontaneous right cerebellar hemorrhage with brainstem compression and obstructive hydrocephalus, and acute hypoxemic respiratory failure.

70. As a direct and proximate result of the negligence of the Medical Staff, and specifically the Medical Defendant, as described above, for which Princess is vicariously liable, the Plaintiff was injured in and about his body and extremities, including severe physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, disability, impairment, loss of past

earnings and impairment of his future working ability and earning capacity, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions, incurred medical expenses in the past and will continue to incur such expenses in the future. All of these damages are permanent and continuing in nature. Plaintiff also lost the money paid for the cruise, incurred extra expenses such as transportation and had the enjoyment of the cruise ruined or damaged.

WHEREFORE, Plaintiff, respectfully requests that this Court enter judgment against the Princess, for compensatory damages, interest, court costs, and all other relief recoverable under general maritime law or as this Court deems just and proper.

**COUNT IV – FAILURE TO WARN AGAINST PRINCESS**

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through forty-four (44) as though alleged originally herein.

71. At all times material, Princess owed the Plaintiff a duty of reasonable care under the circumstances.

72. Further, and as part of the above mentioned duty, at all times material Princess owed the Plaintiff a duty to warn of dangers that were known, or reasonably should have been known, to Princess in places where passengers like Plaintiff were invited or were reasonably be expected to visit, including, but not limited to, in the ship's medical facility and/or as it pertains to the medical services Princess offered and/or provided to passengers like the Plaintiff aboard the vessel.

73. On or about August 14, 2024, Princess breached its duty to provide the Plaintiff with reasonable care under the circumstances, including the duty to warn, as follows:

   a. Failure to reasonably warn passenger, including the Plaintiff, the Medical Staff, and specifically the Medical Defendant, were unable to provide passengers prompt and/or

proper shipboard medical care;

b. Failure to reasonably warn passenger, including the Plaintiff, the Medical Staff, and specifically the Medical Defendant, were unable to safely prescribe medication;

c. Failure to reasonably warn passenger, including the Plaintiff, the Medical Staff, and specifically the Medical Defendant, lacked the knowledge and/or awareness of drug to drug interactions;

d. Failure to reasonably warn passenger, including the Plaintiff, the Medical Staff, and specifically the Medical Defendant, were unable to properly diagnoses and/or differentiate medical diagnosis;

e. Failure to reasonably warn passenger, including the Plaintiff, the Medical Staff, and specifically the Medical Defendant, were unable to recognize medical emergencies in order to medically evacuate a patient; and/or

f. Failure to reasonably warn passenger, including the Plaintiff, the Medical Staff, and specifically the Medical Defendant, that Princess did not have adequate procedures, policies or tools in place to ensure adequate communication between the Medical Staff and Princess' shoreside medical department, in order to ensure a proper and/or more reliable diagnosis of emergency medical conditions.

74. At all times material hereto, Princess knew of the foregoing conditions, or the conditions existed for a sufficient length of time so that Princess, in the exercise of reasonable care under the circumstances, should have learned of them. This knowledge was or should have been acquired through prior incidents involving Princess ship's doctors and/or nurses whom provided improper medical advice and/or treatment to passengers aboard Princess' vessels. *DiGiacinto v. Princess Cruise Lines, Ltd., et. al.,* case no: 2:19-cv-09227, (C.D.Ca. 2019)(failure to properly diagnose, mismanagement, and recognize seriousness of plaintiff's condition while passenger aboard *Emeral Princess*); *A.O. v. Princess Cruise Lines, Ltd*., pre-suit claim (failure to properly treat and inadequate treatment)[3].

[3] Plaintiff is presently unable to determine the existence of other prior similar incidents that provide constructive notice to the Defendant. Upon information and belief, this is due to the Defendant' practice of settling similar cases and, as a part of each settlement agreement, requiring the injured person to enter into a confidentiality clause to conceal the facts and circumstances of the similar prior incident. Accordingly, it is believed that Defendant is intentionally concealing prior incidents that may be substantially similar to the present incident. Likely, the only way to uncover

75. As a direct and proximate result of the negligence of Princess, the Plaintiff was injured in and about his body and extremities, including severe physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, disability, impairment, loss of past earnings and impairment of his future working ability and earning capacity, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions, incurred medical expenses in the past and will continue to incur such expenses in the future. All of these damages are permanent and continuing in nature. Plaintiff also lost the money paid for the cruise, incurred extra expenses such as transportation and had the enjoyment of the cruise ruined or damaged.

WHEREFORE, Plaintiff, respectfully requests that this Court enter judgment against the Princess, for compensatory damages, interest, court costs, and all other relief recoverable under general maritime law or as this Court deems just and proper.

**COUNT VI – GENERAL NEGLIGENCE AGAINST PRINCESS**

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through forty-four (44) as though alleged originally herein.

76. On or about August 14, 2024, the Princess breached its duty to provide the Plaintiff with reasonable case under the circumstances as follows:

a. Failure to timely assess the Plaintiff's medical condition;

b. Failure to provide the Plaintiff with prompt and/or proper shipboard medical care, including but not limited to the provision of appropriate medications;

c. Failure to furnish the Plaintiff such medical advice, aid and/or assistance as an ordinarily prudent person would render under similar circumstances;

d. Failure to adequately staff the vessel with sufficient medical personnel, sufficient medical supplies and/or medication;

prior similar incidents in this case is through the discovery process.

e. Failure to have "Face to Face Telemedicine" tools in place and/or failure to use those tools when necessary, such as in the Plaintiff's case here and/or otherwise failing to have adequate procedures, policies or tools in place to ensure adequate and proper medical care; and/or

f. Failure to provide the Plaintiff with medical care that did not fall below the acceptable standard of care.

77. At all times material hereto, Princess knew of the foregoing conditions, or the conditions existed for a sufficient length of time so that Princess, in the exercise of reasonable care under the circumstances, should have learned of them. This knowledge was or should have been acquired through prior incidents involving Princess ship's doctors and/or nurses whom provided improper medical advice and/or treatment to passengers aboard Princess' vessels. *DiGiacinto v. Princess Cruise Lines, Ltd., et. al.,* case no: 2:19-cv-09227, (C.D.Ca. 2019)(failure to properly diagnose, mismanagement, and recognize seriousness of plaintiff's condition while passenger aboard *Emeral Princess*); *A.O. v. Princess Cruise Lines, Ltd*., pre-suit claim (failure to properly treat and inadequate treatment).

78. As a direct and proximate result of the negligence of Princess, the Plaintiff was unable to obtain the prompt, timely, proper and adequate medical care he required resulting in devastating and life altering injuries. Had the Plaintiff received the appropriate care and treatment from the Medical Staff, and specifically the Medical Defendant, it is more likely than not he would not have developed acute spontaneous right cerebellar hemorrhage with brainstem compression and obstructive hydrocephalus, and acute hypoxemic respiratory failure.

79. As a direct and proximate result of the negligence of Princess, the Plaintiff was injured in and about his body and extremities, including severe physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, disability, impairment, loss of past earnings and impairment of his future working ability and earning capacity, inconvenience in the normal

pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions, incurred medical expenses in the past and will continue to incur such expenses in the future. All of these damages are permanent and continuing in nature. Plaintiff also lost the money paid for the cruise, incurred extra expenses such as transportation and had the enjoyment of the cruise ruined or damaged.

WHEREFORE, Plaintiff, respectfully requests that this Court enter judgment against Princess for compensatory damages, interest, court costs, and all other relief recoverable under general maritime law or as this Court deems just and proper.

**COUNT VII – GENERAL NEGLIGENCE AGAINST DUSAN SEKULIC,**

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through forty-four (44) as though alleged originally herein.

80. At all times materials, Dr. Dusan Sekulic, owed the Plaintiff a duty of reasonable care under the circumstances.

81. On or about August 14, 2024, Dr. Dusan Sekulic, breached his duty to provide reasonable case under the circumstances as follows:

   a. Failure to properly conduct a comprehensive work-up;

   b. Failure to properly take into account the Plaintiff's multiple comorbidities, including but not limited to his medications when evaluating and treating Plaintiff;

   c. Failure to consider and explore other potential diagnoses given Plaintiff's symptoms and comorbidities;

   d. Failure to establish a differential diagnosis(es) given the Plaintiff's multiple comorbidities, symptoms and conditions;

   e. Misdiagnosing Plaintiff's medical condition;

   f. Failure to recognize and appreciate the seriousness and gravity of the Plaintiff's condition and symptoms;

g. Administering medications with known major drug-drug interactions;

h. Failure to keep the Plaintiff in the infirmary for proper monitoring given his symptoms and comorbidities;

i. Failure to test/monitor INR;

j. Failure to perform ultrasound to properly rule out DVT or hematoma;

k. Failure to hold/adjust Warfarin;

l. Failure to conduct examination for signs of bleeding verse infection;

m. Failure to differentiate DVT verse cellulitis verse bleed

n. Failure to administer vitamin K supplementation;

o. Failure to check/monitor renal and liver functions;

p. Failure to medically evacuate;

q. Failure to timely obtain shoreside consultation with the appropriate medical expert(s);

r. Failure to provide competent medical staff capable of providing “full-time professional emergency medical attention” as advertised and guaranteed on Princess’ website and as set forth in the Passenger Bill of Rights adopted by Princess;

s. Failure to promptly provide Plaintiff with timely, proper and/or adequate medical care and attention;

t. Failure to timely and/or properly assess and diagnosis Plaintiff and identify emergent, urgent condition of the Plaintiff in a timely manner, in order to facilitate optimum levels of health care;

u. Failure to understand and react effectively to Plaintiff’s medical needs given his symptoms and comorbidities and to perform accurate and ongoing assessments of Plaintiff’s condition;

v. Failure to practice medicine according to generally accepted standards of care;

w. Failure to adhere to industry standards including but not limited to the American College of Emergency Physicians Cruise Ship Guidelines; and/or

x. A breach of the prevailing professional standard of care for said health care providers, to wit: that level of care, skill and treatment which, in light of all relevant surrounding circumstances as recognized as acceptable and appropriate by a reasonably prudent similar health care

provider.

82. As a direct and proximate result of the negligence of Dr. Dusan Sekulic, the Plaintiff was unable to obtain the prompt, timely, proper and adequate medical care he required resulting in devastating and life altering injuries. Had the Plaintiff received the appropriate care and treatment from the Medical Staff, and specifically the Medical Defendant, it is more likely than not he would not have developed acute spontaneous right cerebellar hemorrhage with brainstem compression and obstructive hydrocephalus, and acute hypoxemic respiratory failure.

83. As a direct and proximate result of the negligence of Dr. Dusan Sekulic, the Plaintiff was injured in and about his body and extremities, including severe physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, disability, impairment, loss of past earnings and impairment of his future working ability and earning capacity, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions, incurred medical expenses in the past and will continue to incur such expenses in the future. All of these damages are permanent and continuing in nature. Plaintiff also lost the money paid for the cruise, incurred extra expenses such as transportation and had the enjoyment of the cruise ruined or damaged.

WHEREFORE, Plaintiff, respectfully requests that this Court enter judgment against Princess for compensatory damages, interest, court costs, and all other relief recoverable under general maritime law or as this Court deems just and proper.

Dated: June 2, 2025

LIPCON, MARGULIES,
& WINKLEMAN, P.A.
*Attorneys for Plaintiff*

2800 Ponce De Leon Blvd., Suite 1480
Coral Gables, Florida 33141
Telephone No.: (305) 373-3016
Facsimile No.: (305) 373-6204

By: *_/s/ Carol L. Finklehoffe_*
**CAROL FINKLEHOFFE**
Florida Bar No. 0015903
cfinklehoffe@lipcon.com