**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:25-cv-24748-KMW**

**ANN O'MALLEY,**

Plaintiff,

v.

**PRINCESS CRUISE LINES, LTD.,**

Defendant.
_________________________________/

**DEFENDANT'S MOTION IN *LIMINE* TO EXCLUDE OPINIONS AND TESTIMONY OF GERALD NIELSEN AT TRIAL PURSUANT TO *DAUBERT V. MERRILL DOW PHARM, INC.***

Defendant, PRINCESS CRUISE LINES, LTD. (hereinafter "Defendant" or "Princess"), by and through its undersigned counsel, hereby files this Motion in *Limine* to Exclude Opinions and Testimony of Gerald Nielsen at Trial Pursuant to *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993), and in support thereof would state as follows:

## I. INTRODUCTION AND BRIEF SUMMARY OF ARGUMENT

1. On June 25, 2026, Plaintiff served his Expert Witness Disclosure disclosing Gerald Nielsen ("Nielsen") as an expert, among others. *See Plaintiff's Expert Witness Disclosure*, attached hereto as **Composite Exhibit A**.

2. Mr. Nielsen's deposition was taken on July 21, 2026. *See Deposition Transcript of Gerald Nielsen*, attached hereto as **Exhibit B** (cited within as "Tr.").

3. During the deposition, Mr. Nielsen was questioned about opinions in his disclosed report disclosed on June 25, 2026 including:

A) Opinion #1: "Despite conditions requiring advanced medical care and immediate medical evacuation on 6 February 2024, the Emerald Princess continued away from accessible advanced care in California and Northern Mexico. This failure to promptly disembark Ms. O'Malley denied her the opportunity for prompt shoreside hospital evaluation or treatment."

B) Opinion #3: "Carnival Corporation and Princess Cruise Line have multi-tiered policies and procedures regarding passenger care and medical disembarkation. The crew on the Emerald Princess did not follow established policies and procedures for the medical disembarkation of patients."

*See* Mr. Nielsen's report attached as **Exhibit C**.

4. Mr. Nielsen's opinions #1 and #3 should be properly excluded, pursuant to *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993) and Federal Rules of Evidence 403 and 702, as he is unqualified to provide medical expert opinions.

5. Specifically, Mr. Nielsen conceded at his deposition that he does not have a medical license and is not qualified to offer medical opinions. His opinions #1 and #3 are based upon medical opinions that he is not qualified to render and for which he did not establish a proper basis.

6. Additionally, Mr. Nielsen's opinion #1 should be excluded pursuant to *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993) and Federal Rules of Evidence 403 and 702, as he is unqualified to provide an expert opinion as to medical evacuations to the ports at issue, especially the Mexican ports, and further has provided no reliable methodology for any of the expert opinions he plans to provide at trial on this subject.

7. Specifically, Mr. Nielsen's opinions as to the capabilities, operation, and functionality of the subject ports including Los Angeles, San Diego, and Ensenada are based upon

nothing more than pure speculation and assumption that these ports operate in the same way, had full functionality and service at the times in question, and that the Mexican ports operate similarly to American ports. His opinions are not supported by any factual bases, any independent research, nor any peer-review supported theories.

8. Thus, Mr. Nielsen should not be allowed to provide testimony or opinions in relation to the areas addressed as opinions #1 and #3 above, at trial.

## II. LEGAL STANDARD

The district court serves as a gatekeeper to the admission of scientific testimony by ensuring that "speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.' " *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). In determining the admissibility of expert evidence, the court engages in a rigorous three-part inquiry pursuant to *Daubert* and its progeny. Relevant expert testimony is admissible only if the trial court finds that: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Rosenfeld v. Oceania Cruises Inc.*, 654 F. 3d 1190, 1193 (S.D. Fla. 2011) (*quoting United States v. Frazier*, 387 F.3d at 1260); *see also Daubert*, 509 U.S. at 589. The Eleventh Circuit has referred to these requirements as the "qualification," "reliability," and "helpfulness" prongs, and although there may inevitably be overlap, the three prongs remain distinct concepts that must be individually analyzed. *Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

Moreover, "[t]he burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). "Thus, the proponent must demonstrate that the witness is qualified to testify competently, that his opinions are based on sound methodology, and that his testimony will be helpful to the trier of fact." *U.S. v. Masferrer*, 367 F. Supp. 2d 1365, 1372 (S.D. Fla. 2005)(interpreting *Allison*, 184 F.3d at 1306). "Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." *Frazier*, 387 F.3d at 1263; *Disler v. Royal Caribbean Cruise Ltd.*, No. 17-CV-23874, 2019 WL 5260249, at *4 (S.D. Fla. July 10, 2019).

**A. Qualifications**

"Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony.'" *Clena Investments, Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012) (quoting *Jack v. Glaxo Wellcome, Inc.*, 239 F.Supp.2d 1308, 1314–16 (N.D. Ga. 2002)). "In other words, a district court must consider whether an expert is qualified to testify competently regarding the matters he intends to address." *Clena Investments, Inc.*, 280 F.R.D. at 661 (citing *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562–63 (11th Cir. 1998)). After a review of the relevant issues and an expert's qualifications, "the determination regarding qualification to testify rests within the district court's discretion." *Clena Investments, Inc.*, 280 F.R.D. at 661 (*citing Berdeaux v. Gamble Alden Life Ins. Co.*, 528 F.2d 987, 990 (5th Cir. 1976) (footnote omitted)).

**B. Methodology**

To evaluate the reliability of an expert opinion, courts consider, to the extent practicable: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique and (4) whether the technique is generally accepted in the scientific community. These factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion. *See Farley v. Oceania Cruises, Inc.*, 2015 WL 1131015 (S.D. Fla. Mar. 12, 2015) (*citing United States v. Frazier*, 387 F.3d 1244, 1261-62 (11th Cir. 2004) (en banc)). It is an evidentiary requirement that expert opinions be connected to existing data by something more than the "it is so because I say it is so" of the expert. *See Holesapple v. Barrett*, 5 Fed. Appx. 177 (4th Cir. 2001); *Slaughter v. Southern Talc. Co.*, 919 F.2d 304, 307 (5th Cir. 1990) ("[W]ithout more than credentials and a subjective opinion, an expert's opinion that 'it is so' is not admissible."); FED. R. EVID. 702 advisory committee's note (2000 amendments) ("The trial judge in all cases of proffered must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted.).

**C. Helpfulness**

"[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person" and offers something "more than what lawyers for the parties can argue in closing arguments." Frazier, 387 F.3d at 1262–63 (citations omitted). Furthermore, while "[a]n expert may testify as to his opinions on an ultimate issue of fact ... he 'may not testify as to his opinion regarding ultimate legal conclusions.'" *Umana–Fowler v. NCL (Bahamas) Ltd.*, 49 F.Supp.3d 1120, 1122 (S.D. Fla. 2014) (*quoting United States v. Delatorre*, 308 Fed.Appx. 380, 383 (11th Cir. 2009)). The Eleventh Circuit has also made clear that "merely telling the jury what result

to reach is unhelpful and inappropriate." *Umana–Fowler*, 49 F.Supp.3d at 1122 (citing *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990)). Legal conclusions or statements instructing what conclusion the jury should reach are impermissible to pass muster under *Daubert*. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1112 n.8 (11th Cir. 2005) ("[C]ourts must remain vigilant against the admission of legal conclusions") (citations & quotations omitted); *see also Montgomery*, 898 F.2d at 1541 (11th Cir. 1990) ("An expert may not ... merely tell the jury what result to reach."). "A witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law." *Montgomery*, 898 F.2d at 1541 (*citing United States v. Poschwatta*, 829 F.2d 1477, 1483 (9th Cir. 1987); *United States v. Baskes*, 649 F.2d 471, 479 (7th Cir. 1980)).

## III. ARGUMENT AND ANALYSIS

Pursuant to his report and testimony, Mr. Nielsen intends to offer the following three (3) expert opinions in this case:

(1) Despite conditions requiring advanced medical care and immediate medical evacuation on 6 February 2024, the Emerald Princess continued away from accessible advanced care in California and Northern Mexico. This failure to promptly disembark Ms. O'Malley denied her the opportunity for prompt shoreside hospital evaluation or treatment;

(2) Princess Cruise Line and Carnival Corporation policies delegating the decision to disembark a patient solely to the ship's doctor conflict with the ISM Code. Commercial vessels operating internationally are required to abide by the ISM Code, which explicitly designates the captain as the overriding authority for safety decisions, which Princess Cruise Line and Carnival Corporation's current procedures do not follow; and

(3) Carnival Corporation and Princess Cruise Line have multi-tiered policies and procedures regarding passenger care and medical disembarkation. The crew on the Emerald Princess did not follow established policies and procedures for the medical disembarkation of patients.

[*See* **Ex. C**]. At his deposition, Mr. Nielsen acknowledged that opinions #1 and #3 included medical opinions he was not qualified to give. Additionally, with respect to opinion #1, Mr. Nielsen did not know whether his opinions were supported by any actual factual basis. Instead,

Mr. Nielsen's opinions were based upon his prior experience and his knowledge of general United States practices, upon the assumption that they would be the same in a foreign country and without performing research into what the actual capabilities were on the night at issue or reviewing Mexican Port Authority policies and procedures.

Mr. Nielsen's opinions should be precluded as he is not qualified to render medical opinions. Further, Mr. Nielsen's "methodology" is not reliable nor helpful to a trier of fact as his opinions are derived from complete speculation and hypothetical unproven scenarios of facts. Defendant addresses each prong of the *Daubert* analysis below.

## ***DAUBERT*** **ANALYSIS**

### Qualifications

"The qualifications requirement is 'not stringent' and '[s]o long as the witness is minimally qualified, objections to 'the level of [his] expertise [go] to credibility and weight, not admissibility.' " *Jackson v. Aden*, No. 3:24CV429-TKW-ZCB, 2025 WL 3140630, at *4 (N.D. Fla. Oct. 24, 2025). "[A]ssuming the expert is qualified to testify, the subject matter of the testimony must be within the scope of his expertise." *Id.* (*citing Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001)).

### Medical Opinions

Mr. Nielsen is not qualified to testify about medical opinions. He does not hold any active medical licenses or certifications. [Ex. B, Tr. 30:3-16]. He agreed at his deposition that he is not holding himself out as a medical expert and that he is not qualified to offer any medical opinions. [Ex. B, Tr. 30:17-24]. Mr. Nielsen further agreed that he is not qualified to make a determination about what conditions require advanced medical care or when immediate evacuation would be clinically warranted. [Ex. B, Tr. 98:3-14]. With respect to opinion #3, Mr. Nielsen conceded that

interpretation of the medical chart would be required to determine when the captain should have been notified based upon the Plaintiff's medical condition and that he is not able to independently come up with that medical opinion. [Ex. B, Tr. 132:1-133:15].

**<u>Reliability / Methodology</u>**

"[S]omething doesn't become 'scientific knowledge' just because it's uttered by a scientist; nor can an expert's self-serving assertion that his conclusions were 'derived by the scientific method' be deemed conclusive." *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004). Reliability of the methodology requires "an exacting analysis of the proffered expert's methodology." *Leger v. Carnival Corp.*, No. 1:24-CV-21364, 2025 WL 1295042, at *2 (S.D. Fla. Feb. 25, 2025)(*citing McCorvey*, 298 F.3d at 1257). To satisfy this requirement, the expert testimony must "be supported by appropriate validation—i.e., 'good grounds,' based on what is known." *Jackson*, 2025 WL 3140630, at *5 (citing *Frazier*, 387 F.3d at 1261).

"That analysis takes into consideration a number of factors, including: (1) whether the expert's methodology can be, and has been, tested; (2) whether the expert's scientific technique has been subjected to peer review and publication; (3) whether the method employed has a known rate of error; and (4) whether the technique is generally accepted in the scientific community." *Leger*, 2025 WL 1295042, at *2 (*citing Rink*, 400 F.3d at 1291–92). "And, '[i]f the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.' " *Jackson*, 2025 WL 3140630, at *5 (emphasis original); *see also McClain*, 401 F.3d at 1244 (explaining that an "expert's assurances that he has utilized generally accepted scientific methodology are insufficient" and that a court must do more than simply take "the expert's word for it"); *Brashevitzky v. Reworld Holding Corp.*, 348 F.R.D. 107,

118 (S.D. Fla. 2024)("An expert cannot rely on 'experience' without explaining in detail how the experience and other materials consulted support the opinion rendered.")

Federal Courts have further precluded expert opinions based upon foreign operations, where the expert had no experience in that foreign country. In *United States v. Valencia-Lopez*, the Ninth Circuit addressed the admissibility of expert testimony which relied upon knowledge and experience in the United States, for opinions related to drug operations in Mexico. *U.S. v. Valencia-Lopez*, 971 F.3d 891 (9th Cir. 2020)(finding district court did not properly fulfill its gatekeeping role under *Daubert* and *Kumho Tire Co.*, in allowing the U.S. ICE Special Agent to testify). In *Valencia-Lopez*, a United States ICE Special Agent provided expert opinions regarding the probability of drug trafficking organizations in Mexico. *Id.* at 901. In finding the expert testimony inadmissible, the Ninth Circuit pointed out that: "…most of his cases arose in the United States and he did not 'operate in an undercover capacity ... in Mexico.'" *Id.* at 900. The Special Agent's methodology was further questioned as his interview with cartel members in Mexico was too "vague and generalized" to establish any reliable principles or methods. *Id.* at 901 ("Even had he testified that he was familiar with the 'right' type of cartels; given his lack of experience within Mexico, and with no explanation of his methodology, 'there is simply too great an analytical gap between' his experience and his conclusion."). *See also Mamani v. Berzain*, No. 07-22459-CIV, 2018 WL 1010582, at *1 (S.D. Fla. Feb. 22, 2018) (finding methodology of expert anthropologist unreliable and noting he performed no first-hand data collection in the foreign country that he was providing opinions upon).

**Medical Opinions**

As outlined above, Mr. Nielsen is not qualified to render medical opinions. Additionally, his methodology was insufficient to provide a basis for the medical opinions he relies upon because

he did not review any deposition testimony of physicians upon which to rest these opinions. [Ex. B, Tr. 84:15-19]. While Mr. Nielsen maintains that he could refer to statements from medical experts to support his opinions, he conceded that he did not have those medical expert opinions available when he authored this opinion. [Ex. B, Tr. 98:15-99:11; 103:21-105:1]. The only basis for the opinion that Ms. O'Malley's medical condition warranted immediate evacuation that he had at the time he drafted his report was Plaintiff's complaint. [Ex. B, Tr. 100:1-17].

Additionally, Mr. Nielsen's opinion #1 rests upon hypothetical responses assuming the decision to medically disembark Ms. O'Malley was made instantaneously upon her first or second presentation to the medical center allowing for no time for medical evaluation or treatment before making that determination. [Ex. B, Tr. 101:2-103:15]. Mr. Nielsen's methodology is overly simplified and fails to consider when the medical team would have realistically been able to determine that Ms. O'Malley's condition warranted the need for medical evacuation or whether she was stable enough for medical evacuation.

**Port Capabilities and Procedures**

Mr. Nielsen provides no reliable methodology for reaching the opinions offered in his report, and instead his opinions are relied solely upon his personal knowledge and assumptions based upon how a typical U.S. cruise port operates. Mr. Nielsen concedes that he does not know how many cruise berths there were in San Diego or Ensenada and he did not research whether any berths were actually available on the dates in question. [Ex. B, Tr. 110:7-112; 116:25-117:13]. He also conceded he did not look into the availability of pilots in Ensenada or San Diego. [Ex. B, Tr. 112:7-114:16; 117:14-20]. He also conceded that a transfer into a Mexican port such as Ensenada would require the cooperation of Mexican authorities, but he did not review Mexican Port Authority policies or procedures. [Ex. B, Tr. 114:17-116:9]. In addition to his failure to

independently research and confirm the details of the individual ports, Mr. Nielsen's methodology failed to account for the time needed to clear these logistical and regulatory hurdles. [Ex. B, Tr. 116:10-116:24; 117:21-119:16]

As Mr. Nielsen is relying solely or primarily on his own experience, he must explain *how* that experience leads to the conclusions reached. *Jackson*, 2025 WL 3140630, at *5; *see also McClain*, 401 F.3d at 1244. However, Mr. Nielsen did not review policies and procedures of the Mexican Port Authority to determine with any certainty whether their ports would operate similarly to the United States ports for medical evacuations. [**Ex. B**, Tr. 114:17-116:9]. Mr. Nielsen's report and testimony further do not provide any references, publications, articles, studies, research, or other materials consulted aside from vague references to Internet or Grok searches about Mexican Navy MEDEVAC of a vessel and general port information. [Ex. B, Tr. 22:13-23:5] *Brashevitzky*, 348 F.R.D. at 118. Thus, Mr. Nielsen's opinions here cannot be determined to be premised on any " 'good grounds,' based on what is known" as the majority of his opinions are based on unknown Mexican practices. *Jackson*, 2025 WL 3140630, at *5.

This Court should not merely accept Mr. Nielsen's testimony based upon how a typical U.S. cruise port operates and that the subject ports would have had full capabilities and availability on the dates at issue, as not only is this entirely unsupported by evidence, but it could very possibly be false and thus prejudicial to present to a trier of fact. Mr. Nielsen does not have the requisite knowledge or experience of medical evacuations from cruise ships in the subject ports to support such opinions. *McClain*, 401 F.3d at 1244; *Valencia-Lopez*, 971 F.3d at 901. Thus, as there is no underlying reliable methodology or factual support for his opinions as to when Ms. O'Malley's medical condition was sufficiently advanced to require immediate medical evacuation or when and

how a medical evacuation would have been completed to the various ports, Mr. Nielsen's opinions #1 and #3 fail the second prong of the *Daubert* analysis and should be precluded from trial.

**Helpfulness**

"An expert's testimony must be helpful to meet the third *Daubert* requirement. To be helpful, expert testimony must fit the facts of the case." *Brashevitzky*, 348 F.R.D. at 115 ("A party's failure to establish the first or second prong obviates the need to proceed to the next prong; the proffered expert testimony is not admissible without satisfying all three prongs."). "Just as an opinion is unreliable if it is based upon an analytical leap that is too great between the underlying information and the proffered opinion, there is not a 'fit' for purposes of the helpfulness prong when 'a large analytical leap must be made between the facts and the opinion.'" *Id*. ("[C]ourts consider 'analytical leaps' under both the reliability and helpfulness prongs of *Daubert*") (*quoting McDowell*, 292 F. 3d at 1298-99. Expert testimony that "offers nothing more than what lawyers for the parties can argue in closing arguments" generally will not assist the trier of fact and will be excluded." *Id.* (*citing United States v. Frazier*, 387 F.3d at 1262-63).

The expert opinions and testimony outlined in Mr. Nielsen's opinions #1 and #3 cannot be found helpful to a trier of fact as they are wholly unsupported by any medical qualifications or actual knowledge of capabilities and availability of the subject ports on the dates in question or of Mexican Port Authority policies and procedures for medical evacuations.

In short, Mr. Nielsen has provided two (2) opinions based on nothing but a speculation of underlying facts, using hypothetical and unproven scenarios and conditions, which is entirely unhelpful to a trier of fact. Thus, Mr. Nielsen's opinions #1 and #3 also fail the third and final prong of the *Daubert* analysis and should be precluded from trial.

**CONCLUSION**

Mr. Nielsen is not qualified to provide medical opinions and should not be permitted to offer improper medical opinions at trial or offer opinions based upon his improper medical opinions. Additionally, Mr. Nielsen's opinions as to the capabilities, operation, and functionality of the ports at issue are based upon nothing more than pure speculation and assumption that these ports operate the same way and had full capabilities on the dates in question, which he did not confirm. Mr. Nielsen's opinions are further not supported by any factual bases, any independent research, nor any peer-review supported theories, amounting to no methodology, let alone reliable methodology. Therefore, Mr. Nielsen should be precluded from rendering any of the opinions outlined in opinions #1 and #3 at trial.

WHEREFORE, Defendant, PRINCESS CRUISE LINES, LTD., respectfully requests that this Court enter an Order precluding Gerald Nielsen from rendering any expert opinions as outlined in his opinions #1 and #3, and for any further relief this Courts deems just and proper.

**CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(A)(3)**

In accordance with Local Rule 7.1(A)(3), undersigned counsel hereby certifies that Plaintiff opposes the relief sought in this Motion.

Respectfully submitted,

GrayRobinson, P.A.
515 North Flagler Drive, Ste. 650
West Palm Beach, Florida 33401
Tel: (561) 268-5727
Fax: (561) 268-5747

By: */s/ Charles J. Roussin*
Michael J. Drahos
Florida Bar No. 0617059
michael.drahos@gray-robinson.com
Ashley N. Genoese
Florida Bar No. 1019357

ashley.genoese@gray-robinson.com
Charles J. Roussin
Florida Bar No. 1010409
charles.roussin@gray-robinson.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to received electronically Notices of Electronic Filing.

*/s/ Charles Roussin*

**SERVICE LIST**
**CASE NO. 1:25-cv-24748-KMW**

Thomas B. Scolaro, Esq.
Scolaro Law
1728 Coral Way, Suite 702
Miami, Florida 33145
Tel: (305) 424-2300
Fax: (305) 424-2140
tom@usinjury.law

Laurence M. Krutchik, Esq.
LMK Legal
7450 SW 172nd Street
Palmetto Bay, Florida 33157
Tel: (305) 527-6866
Fax: (305) 433-2334
lmk@lmklegal.com

*Attorneys for Plaintiff*